**Claude E. LONG, Plaintiff-Appellee,**

v.

**FORD MOTOR COMPANY, Defendant-Appellant.**

**No. 73–1993.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1974.

Decided April 30, 1974.

Louis F. Oberdorfer, Washington, D. C., for defendant-appellant; James Robertson, Peter A. Bell, Cary Lerman, Washington, D. C., Joseph A. O'Reilly, James R. Jackson, Ford Motor Co., Dearborn, Mich., on brief; Wilmer, Cutler & Pickering, Washington, D. C., of counsel.

William D. Haynes, Detroit, Mich., for plaintiff-appellee; V. Paul Donnelly, Detroit, Mich., on brief.

Before CELEBREZZE and ENGEL, Circuit Judges, and ROSENSTEIN, Senior Customs Judge.*

CELEBREZZE, Circuit Judge.

Ford Motor Company appeals from a judgment awarding Claude E. Long $10,949 on his claim that his discharge from Ford was racially discriminatory in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. We reverse and remand for further consideration.

Claude Long, a black college graduate and former Department of Labor compliance officer, sought employment with Ford Motor Company, hoping to get into industrial management in the field of labor relations. On July 19, 1967, Long was hired as a production line foreman.

---

* The Honorable Samuel M. Rosenstein, Senior Judge, United States Customs Court, sitting by designation.

After nearly two years on this job, during which time he received three satisfactory and one unsatisfactory performance evaluations, Long filed a complaint with the Michigan Civil Rights Commission, alleging that his race was the cause of harassment, an unfair performance review, and the denial of a promotion. In May 1969, Long was transferred to the Industrial Relations Department of Ford's Frame Plant, and he withdrew his charge prior to investigation.

At the Frame Plant, Long was rotated among several positions. He began as a "wage analyst" on June 1, 1969. In January 1970 he was assigned to head the Suggestions Program, in which capacity he received an award. In April he was shifted to a position where he developed the Frame Plant's medical leave procedures. He was returned to the wage analyst position in June 1970. On these jobs, Long received a "satisfactory plus" performance evaluation on December 1, 1969, a letter of repimand on July 24, 1970 (prompted primarily by work left on his desk when he left for vacation on June 28), and an "unsatisfactory" rating on October 26, 1970. After this final evaluation, Long submitted a letter of rebuttal to the poor rating. Following a meeting with his immediate and plant supervisors, Long resigned on November 30, 1970, after being offered the choice of discharge or resignation. On November 17, 1971, Long filed a complaint in Federal District Court, alleging violations of Title VII of the 1964 Civil Rights Act, 42 U. S.C. § 2000e et seq., and of the Civil Rights Act of 1866, 42 U.S.C. § 1981. On May 1, 1972, the District Court dismissed his claim under Title VII for failure to comply with the requirement of a timely filing with the Federal Equal Employment Opportunity Commission. The District Court proceeded to a hearing on the merits of the § 1981 claim.

Testimony was taken from Long, his supervisors, and his fellow workers. Long's primary argument was that he had been treated in a dissimilar manner from other persons, that he had received outright antagonism from his plant supervisor, and that the actions which prevented him from rising to a position in labor relations were prompted by racial prejudice.

The District Court found for Long. While it made various findings and observations, the District Court's central holding was that Ford violated Section 1981 by failing to train Long adequately for his tasks.[1] The District Court characterized Long as a "capable man," who because he "was not adequately trained . . . could not perform adequately."[2] The Court concluded:

> "If [black] people are not given adequate job training and are, as a result, terminated, then unequal employment opportunity still results. This imbalance is a real factor in racial discrimination. Racial discrimination in employment will not end until such people are given thorough job training so that they can perform adequately. Inadequate job training in a situation such as this fosters racial discrimination. Thus, this court is convinced that race was a factor (possibly not the only factor) in the termination of Claude Long."[3]

Ford makes two basic arguments on appeal. First, it contends that Appellee's complaint should have been dismissed because he failed to pursue his remedies under Title VII of the 1964 Civil Rights Act. Second, Ford contends that reversal on the merits is necessary because the record and findings of the District Court do not sustain a judgment for Long under the principles

1. The District Court's opinion is reported at 352 F.Supp. 135 (E.D.Mich.1972). Long's lack of training was cited as the "fact that is controlling in this situation." 352 F.Supp. at 139.

2. *Id.*

3. *Id.* at 140.

of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

▮ Ford does not contend that Section 1981 does not apply to private employment contracts. It is settled that Section 1981 prohibits racial discrimination in private employment.[4]

▮ Ford argues, however, that Long's complaint should have been dismissed because he failed to file a charge with the Equal Employment Opportunity Commission within 210 days of his discharge. This was a jurisdictional prerequisite for bringing a Title VII suit under 42 U.S.C. § 2000e–5(d) (1970),[5] and, so it is argued, impliedly a jurisdictional prerequisite to a § 1981 action.

Ford's procedural objection is not without support in the case law. In Waters v. Wisconsin Steel Works of Int'l Harvesters Co., 427 F.2d 476 (7th Cir.), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970), the Seventh Circuit held that a plaintiff in a § 1981 action must show a reasonable excuse for having bypassed his Title VII remedies. *See also* Kinsey v. Legg, Mason & C̄o., Inc., 60 F.R.D. 91 (D.D.C.1973).

This viewpoint is a minority position. The Third, Fifth, Eighth, and District of Columbia Circuits have concluded that Section 1981's availability is not limited to those plaintiffs who have pursued their Title VII remedies or have shown a reasonable excuse for not doing so. Young v. Int'l Telephone & Telegraph Co., 438 F.2d 757 (3d Cir. 1971); Caldwell v. National Brewing Co., 5 Cir., 443 F.2d 1044 (1971); Brady v. Bristol-Meyers Co., 459 F.2d 621 (8th Cir. 1972); Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979 (1973). Furthermore, this Court has held in another context that " § 1981 [is] a separate and concurrent cause of action with Title VII." Head v. Timken Roller Bearing Co., 486 F.2d 870 (6th Cir. 1973). We adopt the prevailing view that a plaintiff need not pursue his Title VII remedies before instituting a cause of action under Section 1981.

We are impelled to this conclusion by rules of statutory construction. If Congress had expressly limited Section 1981's availability in the manner Ford urges upon us, we would, be bound by the partial repeal of the earlier statute. Here, however, the question is whether we may imply á change in Section 1981 from the silent face of Title VII of the 1964 Civil Rights Act. This task is complicated by the fact that in 1964 Congress may not have recognized that Section 1981 was available to litigants

4. Although the Supreme Court has not yet squarely held that this is the case, in Tillman v. Wheaton-Haven Recreation Assn., Inc., 410 U.S. 431, 439–440, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973), the Supreme Court held that § 1981 is applicable to private discriminatory acts. An employment contract is covered by § 1981, and Title VII of the 1964 Civil Rights Act has not preempted the field of employment discrimination. Johnson v. City of Cincinnati, 450 F.2d 796 (6th Cir. 1971).

Furthermore, although this Circuit has not explicitly held that § 1981 prohibits racial discrimination in private employment, this conclusion is implicit in at least two holdings. Head v. Timken Roller Bearing Co., 486 F.2d 870 (6th Cir. 1973); Marlowe v. Fisher Body, 489 F.2d 1057 (6th Cir. 1973). This conclusion is unanimous among the circuits that have decided the question. Young v. Int'l Telephone & Telegraph Co., 438 F. 2d 757 (3d Cir. 1971); Brown v. Gaston County Dyeing Machine Co., 457 F.2d 1377 (4th Cir. 1972); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970), cert. denied, 401 F.2d 948, 91 S.Ct. 935, 28 L.Ed. 2d 231 (1971); Waters v. Wisconsin Steel Works of Int'l Harvesters Co., 427 F.2d 476 (7th Cir.), cert. denied, 400 U.S. 911, 91 S. Ct. 137, 27 L.Ed.2d 151 (1970); Brady v. Bristol-Meyers, Inc., 459 F.2d 621 (8th Cir. 1972); Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979 (1973).

5. This requirement has been changed by recent amendments to Title VII. Pub.L. 92–261, § 4(a). See 42 U.S.C.A. § 2000e–5 (1974).

against racial discrimination in private employment.[6]

In Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351 (1936), the Supreme Court stated that a repeal of a statute by implication is not favored. There are two categories where repeal by implication is possible.

(1) [W]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. 296 U.S. at 503.

Title VII is not "in irreconcilable conflict" with Section 1981, and it does not cover the field in which Section 1981 was sown.[7] *See* Sullivan v. Little Hunting Park, 396 U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (regarding the compatibility of § 1982 and the provisions of the Fair Housing Act of 1968). Thus, the availability of Section 1981 is not limited by the existence of remedies under Title VII. "[L]egislative enactments in [the area of racial discrimination in employment] have long evinced a general intent to accord parallel or overlapping remedies against discrimination." Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (citing to § 1981).

Thus the District Court correctly proceeded to the merits of Appellee's claim.

■ We cannot affirm the District Court's decision on the merits, however, because it rests upon an erroneous view of Section 1981. That provision, first enacted as part of the Civil Rights Act of 1966,[8] states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

When a person sues under this statute to enforce his right not to be discriminated against in private employment, he must show that he was unable to make or enforce a contract that white citizens were able to make or enforce. Applied to the facts of this case, Appellee Long must show that he was forced to resign because of dissimilar treatment caused in part by his race.

■ As originally designed in 1866, Section 1981 was intended to uproot the institution of slavery and to eradicate its badges and incidents. *See* Jones v. Alfred H. Mayer Co., 392 U.S. 409, 422–437, 88 S.Ct. 2186, 20 L.Ed.2d

---

6. The 1968 decision of Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), is credited with having resuscitated the Civil Rights Act of 1866, of which § 1981 was a part, as to private defendants.

7. Amendments to make Title VII the exclusive remedy for employment discrimination have been defeated. 110 Cong. Record 13650–52 (1964); 118 Cong. Record, 1524–26 (daily ed. Feb. 9, 1972); 1791–97 (daily ed., Feb. 15, 1972).

Title VII and 1981 afford different tactical *advantages and handicaps to aggrieved parties.* The existence of § 1981 as a procedurally separate source of relief will not likely deter the use of Title VII's conciliation procedures. *See* Note, "Racial Discrim-

ination in Employment under the Civil Rights Act of 1866," 36 U.Chi.L.Rev. 615, 639–41 (1969); Comment, "Is Section 1981 Modified by Title VII of the Civil Rights Act of 1964?," 1970 Duke L.J. 1223, 1235 (1970); Peck, "Remedies for Racial Discrimination in Employment: A Comparative Evaluation of Forums," 46 Wash.L.Rev. 455, 476–79 (1971); Larson, "The Development of Section 1981 as a Remedy for Racial Discrimination in Private Employment," 7 Harv.Civ.Rights—Civ.Lib.L.Rev. 56, 69–84 (1972).

8. The provision was re-enacted with some changes in 1870 and codified in 1874. *See* Jones v. Alfred H. Mayer Co., 392 U.S. 409, 422, n. 28, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

1189, (1968) (analysis applied to § 1981 in Tillman v. Wheaton-Haven Recreation Assn., 410 U.S. 431, 439, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973).) When an employer, public or private, places more stringent requirements on employees because of their race, Section 1981 is violated. The purpose for which the Section was enacted—to afford equal opportunities to secure the benefits of American life regardless of race—requires that a court adopt a broad outlook in enforcing Section 1981. Schemes of discrimination, whether blatant or subtle, are forbidden. Newbern v. Lake Lorelei, Inc., 308 F.Supp. 407, 416 (S.D.Ohio 1968). *Cf.* Lane v. Wilson, 307 U.S. 268, 275, 59 S.Ct. 872, 83 L.Ed. 1281 (1939).

 Section 1981 is by its very terms, however, not an affirmative action program. It is an equalizing provision, seeking to ensure that rights do not vary according to race. It does not require that persons be accorded preferential treatment because of their race.[9] On this point we view the Supreme Court's discussion of Title VII as applicable to Section 1981: [10]

"Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." Griggs v. Duke Power Co., 401 U.S. 424, 430–431, 91 S.Ct. 849, 853, 28 L. Ed.2d 158 (1971).

Thus, it was error for the District Court to hold Appellant liable for a failure to train Appellee adequately, absent a showing that this failure constituted either dissimilar treatment from the training whites receive or treatment similar on its face but dissimilar in its effects upon racial minorities and unfounded on business necessity. *See* Griggs v. Duke Power Co., *supra*; McDonnell Douglas Corp. v. Green, 411 U. S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Robinson v. Lorillard, 444 F.2d 791 (4th Cir. 1971).

Although the District Court made various observations and findings of fact, we cannot perceive an alternative holding sufficient in detail under Rule 52(a), Fed.Rules Civ.Proc., to permit review. Rather than specify that Appellee had received dissimilar treatment, the District Court relied on a rationale of inadequate training *per se*. Thus, we must remand for further proceedings to determine whether Appellee should recover on a proper ground.

 The parties and the District Court did not have the benefit of *McDonnell Douglas'* reasoning in the proceedings below. On remand, the District Court should apply *McDonnell Douglas'* principles on the order and allocation of proof.[11] A person alleging a § 1981 violation must first establish that his employment terms vary from those which his employer accords to similarly situated white workers.

9. There are obligations to take affirmative action in hiring and training minority citizens as a precondition to being awarded government contracts. *See* Exec.Order No. 11,246, 3 C.F.R. 418 (1972). Section 1981 does not impose such an obligation on employers. Castro v. Beecher, 334 F.Supp. 930, 938 (D.Mass.1971), aff'd in part and rev'd in part, 459 F.2d 725 (1st Cir. 1972).

10. Title VII of the 1964 Civil Rights Act, as amended 42 U.S.C.A. § 2000e et seq. (1972),

is not before us. Except for the language quoted, we express no opinion as to the similarities between § 1981 and Title VII.

11. Although *McDonnell Douglas* was a Title VII case, the principles governing these procedural matters apply with equal force to a § 1981 action. *Cf.* United States v. Chesterfield County School District, 484 F.2d 70 (4th Cir. 1973).

This can be shown by proof either that intentional racial prejudice entered into his treatment or that a facially neutral practice (here Appellant's performance evaluation system) operates discriminatorily against minority employees. In this case, Appellee may be able to establish that he was trained inadequately whereas white co-employees were trained adequately.[12] He may be able to establish that Ford's promotion system, which relies heavily upon the subjective evaluation of supervisors, has a discriminatory impact on minority employees, so that its use in discharging him was improper.[13] Appellee may be able to establish that similarly situated white employees with comparable records would have been offered different positions within Ford rather than discharged, whereas he was forced to leave Ford altogether. We express no opinion as to whether the record below would support any of these possible holdings.

■ If Appellee establishes a prima facie case of dissimilar treatment due in part to racial discrimination, Appellant must then establish "some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. at 802. In this case Appellant would argue that Appellee's unsatisfactory performance review justified his termination and that its system of evaluation is grounded on business necessity.[14]

If Appellee has established a prima facie case but Appellant's rebuttal is sufficient to overcome Appellee's initial showing, Appellee must then prove that his discharge was nonetheless a violation of Section 1981 because Appellant's stated reason for the discharge was merely a pretext for a termination actually based on racial prejudice. 411 U.S. at 804. If the proofs reach this point, the District Court will have the task of evaluating the objectivity, sincerity, and honesty of the witnesses to arrive at a necessarily subjective conclusion.

Because of the new light shed on employment discrimination cases by *McDonnell Douglas,* we remand this case for such further proceedings as the District Court deems necessary to arrive at a just and proper conclusion. Affirmed in part and reversed in part for further proceedings in conformance with the principles enunciated herein.

12. *Cf.* E.E.O.C. No. 72–0777 (1971).

13. *See* Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir. 1972); United States v. N. L. Industries, Inc., 479 F.2d 354 (8th Cir. 1973); Brown v. Gaston County Dyeing Machine Co., 457 F.2d 1377 (4th Cir. 1972); Young v. Edgcomb Steel Co., 363 F.Supp. 961 (M.D.N.C.1973); United States v. Local 189, 301 F.Supp. 906 (E.D.La.1969), aff'd, 416 F.2d 980 (5th Cir. 1969), cert. denied, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970); Baxter v. Savannah Sugar Refining Corp., 350 F.Supp. 139 (S.D.Ga.1972).

14. *See* Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Robinson v. Lorillard, 444 F.2d 791, 798 (4th Cir. 1971); United States v. Bethlehem Steel Corp., 446 F.2d 652 (2d Cir. 1971); United States v. Jacksonville Terminal Co., 451 F.2d 418 (5th Cir. 1971); United States v. St. Louis-San Francisco Ry., 464 F.2d 301 (8th Cir. 1972); Brito v. Zia Co., 478 F.2d 1200 (10th Cir. 1973); Moody v. Albermarle Paper Co., 474 F.2d 134 (4th Cir. 1973); McAdory v. Scientific Research Instruments, Inc., 355 F.Supp. 468 (D.Md.1973); Note, "Fair Employment Practices: The Concept of Business Necessity," 3 Memph.St.U.L.Rev. 76 (1972).