Morris HINTON et al., Plaintiffs,

v.

LEE WAY MOTOR FREIGHT, INC., a corporation, and Local 886 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, an unincorporated association, Defendants.

No. 74–1005–D Civil.

United States District Court,
W. D. Oklahoma.

Sept. 19, 1975.

Jim A. Ikard, A. Visanio Johnson, Oklahoma City, Okl., for plaintiffs.

Richard H. Champlin, Oklahoma City, Okl., and Peter B. Bradford, McAfee, Taft, Mark, Bond, Rucks & Woodruff, Oklahoma City, Okl., for Lee Way Motor Freight.

L. N. D. Wells, Jr., and Hal K. Gillespie, Mullinax, Wells, Mauzy & Baab, Inc., Dallas, Tex., for Intern. Brotherhd.

George J. McCaffrey, Oklahoma City, Okl., for Local 886.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This civil rights action alleging violations of the equal rights provisions of 42 U.S.C. § 1981 is brought by a number of black persons who were employed by Defendant Lee Way as over-the-road truck drivers. Plaintiffs are members of Defendant Local 886 which entered into a Collective Bargaining Agreement with Defendant Lee Way. Plaintiffs assert they were hired by Defendant Lee Way as a direct result of said Defendant engaging in affirmative action efforts to increase the number of its black over-the-road drivers. Plaintiffs allege that Defendant Lee Way engaged in said affirmative action program as a result of a decision by another Judge of this Court in a civil rights case brought by the United States Equal Employment Opportunity Commission (EEOC). Defendant Lee Way laid off a number of its over-the-road drivers in October 1974 and in doing so, followed the provisions of its Collective Bargaining Agreement which required that the layoffs be made on a seniority basis. The Plaintiffs having been recently hired by Defendant Lee Way were among those laid off. The alleged civil rights violations and the primary thrust of this action are set out in the Complaint as follows:

"Defendants' seniority lay-off agreement, where blacks were, by virtue of prior discrimination, prevented from accumulating relevant seniority unlawfully perpetuates the effects of past discrimination in violation of 42 U.S.C. Section 1981. It is racially discriminatory to use length of service as a standard for determining which employees should be laid off where blacks were prevented by the Defendants' policies from acquiring long years of service."

The Defendants set out multiple defenses in their Answers. The most significant defense which is substantially the same in both Answers is that the seniority provisions and classifications of the Collective Bargaining Agreement are based on reasonable business necessity and therefore do not constitute acts of discrimination under 42 U.S.C. § 1981. Defendant Lee Way denies certain allegations in the Complaint to include the allegations that its affirmative action program whereby it recruited and trained black drivers for its over-the-road operations was pursuant to a Court Order. It admits that an Order was issued on April 10, 1974 enjoining it from engaging in acts of discrimination and ordering it to hire and dismiss employees without regard to race. It states said Order specifically reserved for future consideration the entry of any Order for affirmative action in recruiting and hiring of blacks.[1] It asserts such program was voluntary on its part.

Evidence was received by the Court on a hearing for a preliminary injunction on

1. An examination of the Judgment entered in case number CIV–72–445 of this Court on April 10, 1974 discloses this contention to be substantially correct.

January 2 and 3, 1975.[2] Such evidence becomes part of the trial record pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure even though the Court did not order the trial of the action on its merits consolidated with said hearing. The case came on for trial September 10, 1975 at which time the parties submitted the case for decision on a Stipulation filed said date (which is dated August 19, 1975) and the testimony of one witness heard that date.

The agreement provision complained of provides:

"When it becomes necessary to reduce the working force, the last employee hired shall be laid off first and when the force is again increased, the employees are to be returned to work in the reverse order in which they were laid off."

The facts indicate that such provision was complied with by Lee Way when its force was reduced. The parties agree that most of the 33 Plaintiffs were hired by Lee Way as trainees after April 10, 1974 and thereafter became over-the-road drivers. It is further agreed that four of the Plaintiffs who were already qualified over-the-road drivers were hired by Lee Way in April, 1974 after applying for jobs no earlier than March 27, 1974. One Plaintiff had worked for Lee Way as a city driver for about a year prior to April, 1974 when he requested and was given a position as an over-the-road driver. It is agreed by the parties that none of the Plaintiffs who were qualified for positions prior to their employment with Lee Way had sought such employment prior to March 27, 1974 nor had the one city driver requested a position as a road driver prior to April 10, 1974. It is further stipulated by the parties that the five previously qualified over-the-road drivers (which number includes the city driver) had not failed or refused to seek employment (or a transfer in the case of the city driver) because of any belief that same would be discriminatorily denied or be futile. It is further agreed that none of the Plaintiffs were discriminated against because of race by Lee Way or Local 886 as to recruitment, hiring, train-

ing, job assignment or conditions of employment other than the reduction of force complained of and further that no Plaintiff was discriminatorily denied employment with Lee Way prior to being so employed. The issues herein are stated in paragraph 8 of the Stipulation as follows:

"Plaintiffs' sole contention . . . is that plaintiffs, as black employees of Lee Way, were affected more than whites by the lay-off of October 24, 1974, in violation of 42 U.S.C. 1981 considering the previous finding by Judge Eubanks in *U. S. A. v. Lee Way*, No. CIV–72–445, that Lee Way had engaged in a pattern and practice of discrimination with respect to its employment practices concerning blacks as road drivers up until June of 1972 when such pattern and practice ceased."

The parties noted that such findings are not final in said case. The parties have further agreed that all Plaintiffs have maintained their seniority during said lay-off and that they will maintain same if recalled within 36 months according to the terms of the Collective Bargaining Agreement. The parties agree that the provisions relating to seniority for road drivers are facially neutral as to race.

The general issues involved in the instant case have been considered in the following recent cases: *Waters v. Wisconsin Steel Works of Int. Harvester Co.*, 502 F.2d 1309 (Seventh Cir. 1974); *Jersey Cen. Power & Li. Co. v. Local Un. 327, Etc., of I. B. E. W.*, 508 F.2d 687 (Third Cir. 1975); and *Watkins v. United Steel Workers of Am., Local No. 2369*, 516 F.2d 41 (Fifth Cir. 1975).

The *Jersey Central Power, supra*, case was a declaratory judgment action brought by an employer to determine its possibly conflicting obligations or responsibilities under the seniority clause of a collective bargaining agreement and under a conciliation agreement entered into by the employer, its Unions, and the EEOC. This latter agreement was based on provisions of Title VII of the 1964 Civil Rights Act. (42 U.S.C. §§ 2000e et seq.) The Court found that the two contracts did not conflict for the reason

2. The preliminary injunction was denied by the Court.

that the seniority provisions were incorporated in the conciliation agreement. The Court then considered whether a seniority clause providing for layoffs by reverse order of seniority was contrary to public policy and in so doing considered the provisions and legislative history of Title VII in great detail. The Court found as follows:

> "We thus conclude in light of the legislative history that on balance a facially neutral company-wide seniority system, *without more*, is a bona fide seniority system and will be sustained even though it may operate to the disadvantage of females and minority groups as a result of past employment practices. If a remedy is to be provided alleviating the effects of past discrimination perpetuated by layoffs in reverse order of seniority, we believe such remedy must be prescribed by the legislature and not by judicial decree."

Although Plaintiffs in the instant case do not assert rights under Title VII, the fact that Congress considered seniority rights at the time the 1964 Civil Rights Act was enacted is evidence of modern legislative intent which is directly in point. The provisions of 42 U.S.C. § 2000e–2(h) authorize the use of seniority systems wherein it provides:

> "Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions or privileges of employment pursuant to a bona fide seniority or merit system, . . ."

Plaintiffs herein do not contend nor does the Court find that the seniority system which is the subject of the instant dispute is not a bona fide system.

The *Waters, supra,* case involved an action by black employees in which the contentions were the same as asserted in the case at bar. The Court stated said contentions to be as follows:

> "At trial Waters challenged the existence of Wisconsin Steel's 'last hired, first fired' seniority system for bricklayers.

Waters claimed the system violated section 1981 and Title VII in that it perpetuated alleged prior discriminatory policies and hiring practices of the defendants."

The Court considered the relationship between the provisions of the 1866 Civil Rights Act as set out in 42 U.S.C. § 1981 and those in Title VII when it stated:

> "Title VII and section 1981 are 'parallel or overlapping remedies against discrimination.' *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Consequently, in fashioning a substantive body of law under section 1981 the court should, in an effort to avoid undesirable substantive law conflicts, look to the principles of law created under Title VII for direction."

The above statement appears appropriate for consideration in the instant case wherein Plaintiffs proceed only under 42 U.S.C. § 1981, possibly attempting to avoid the congressional dictates of Title VII. Courts must apply all principles of law applicable to a given issue and may not narrowly construe a particular statute to the exclusion of an overlapping statute on the same issue. The principles contained in Title VII are applicable to Plaintiffs' case herein and are considered by the Court in deciding same. The Court in *Waters, supra,* made the following statement in regard to the pivotal issue common to said case and the instant case:

> "Title VII speaks only to the future. Its backward gaze is found only on a present practice which may perpetuate past discrimination. An employment seniority system embodying the 'last hired, first fired' principle does not of itself perpetuate past discrimination. To hold otherwise would be tantamount to shackling white employees with a burden of a past discrimination created not by them but by their employer. Title VII was not designed to nurture such reverse discriminatory preferences. *Griggs v. Duke Power Co.,* 401 U.S. 424, 430–431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)."

After concluding that the seniority system in question appeared to be racially neutral

and did not perpetuate the discrimination of the past, the Court made the following observation at footnote 4 of the opinion:

"Having passed scrutiny under the substantive requirements of Title VII, the employment seniority system utilized by Wisconsin Steel is not violative of 42 U.S.C. § 1981."

At the time of the preliminary injunction hearing held in this case, Plaintiffs were relying on the case of *Watkins v. United Steel Workers of America, Loc. No. 2369*, 369 F.Supp. 1221 (E.D.La.1974). Said decision was reversed by the Fifth Circuit Court of Appeals in the case previously cited at 516 F.2d 41. All further references to the *Watkins* case will be to the Fifth Circuit opinion. In said case, the Court considered claims under both Title VII and Section 1981. The Court in *Watkins, supra*, held as follows:

"We hold that, regardless of an earlier history of employment discrimination, when present hiring practices are nondiscriminatory and have been for over ten years, an employer's use of a long-established seniority system for determining who will be laid-off, and who will be rehired, adopted without intent to discriminate, is not a violation of Title VII or § 1981, even though the use of the seniority system results in the discharge of more blacks than whites to the point of eliminating blacks from the work force, where the individual employees who suffer layoff under the system have not themselves been the subject of prior employment discrimination."

In its discussion leading to the conclusion that 42 U.S.C. § 1981 was not violated, the Court stated:

"As demonstrated in our discussion under Title VII, the black plaintiffs received the identical employment benefits, terms and conditions as their white counterparts. The collective bargaining agreement was, in fact, color blind. Totally without regard to the terms of Title VII, the contractual seniority rights of the plaintiffs in this case do not run afoul of the dictates of § 1981. The layoff

provision of the instant seniority system is not only facially nondiscriminatory; it does not perpetuate the effects of past discrimination as to these plaintiffs. When hired, these plaintiffs obtained the same contract rights as white citizens when hired. Blacks are guaranteed the same rights as whites under § 1981, not greater rights. *Long v. Ford Motor Co.*, 496 F.2d 500, 505 (6th Cir. 1974)."

 Considering the overwhelming weight of authority as set out above the Plaintiffs' sole contention that as black employees of Lee Way, they were affected more than whites by the lay-off of October 24, 1974 and their civil rights pursuant to 42 U.S.C. § 1981 were violated in light of findings of past discrimination which did not involve any Plaintiff herein, is without merit. Plaintiffs' action should be dismissed. Judgment for the Defendant will be entered pursuant to this opinion.