Jesse **BLOUNT, Jr.**, Plaintiff,

v.

**XEROX CORPORATION**, Defendant.

**No. C–74–1794 WHO.**

United States District Court,
N. D. California.

Sept. 30, 1975.

James H. Niven, Bennett, Hughes, Kane & Niven, San Mateo, Cal., for plaintiff.

Richard Haas, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant.

## MEMORANDUM OPINION

ORRICK, District Judge.

Plaintiff, a black, middle-level executive, formerly employed by defendant, Xerox Corporation ("Xerox"), charges Xerox with discriminating against him because of his race in violation of the rights guaranteed to him by the Thirteenth Amendment and 42 U.S.C. § 1981. Plaintiff's main contention is that Xerox failed to accord him the preferential treatment in training and advancement called for under the affirmative action program that it had voluntarily adopted. He claims that Xerox's failure to train him adequately resulted in racial discrimination in employment. At the conclusion of the plaintiff's case-in-chief, in the course of which 202 exhibits were introduced and 5 witnesses, including the plaintiff himself, testified, defendant moved for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[1] For the reasons hereinafter stated, the motion is granted.

Preliminarily, it should be noted that in this circuit in ruling upon a Rule 41(b) motion the Court is not bound to consider the evidence in the light most favorable to the plaintiff. It may weigh the evidence, evaluating the veracity, honesty, and sincerity of the witnesses and adjudicate the case on the merits at the conclusion of the plaintiff's case by determining whether the plaintiff's case is sufficient to support a judgment in plaintiff's favor. 5 J. Moore, *Federal Practice* ¶ 41.13 (2d ed. 1974).

### I.

Plaintiff, who has a degree in chemical engineering from the Case Institute of Technology and an M.B.A. degree from City College of New York, is currently employed by Stanford Research Institute as an industrial economist earning $28,000 a year. In September, 1971, after working for Mobil Oil's chemical division, Memorex, and the Celanese Corporation, he was hired by Xerox. Xerox had voluntarily adopted an affirmative action program called "Fast Track", the purpose of which was to

---

1. Rule 41(b) of the Federal Rules of Civil Procedure provides:

   "*Involuntary Dismissal: Effect Thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

   The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

place more minority representatives in middle-management positions. Plaintiff was enrolled in this program with the expectation that he would be considered for the position of branch manager.

The basic operating unit of the Information System Group, the division of Xerox involved in this litigation, is the branch which is headed by a branch manager. Each branch manager has 6 or more sales managers reporting to him, and each sales manager has 6 or more sales representatives plus a number of area sales representatives reporting to him.

After 4 months of training consisting, among other things, of visiting and observing the work performed in various Xerox installations around the country, plaintiff was assigned, effective January 13, 1972, to the San Francisco Branch as Branch Sales Planning Manager, a staff position. Plaintiff's immediate superior, the branch manager, was a white employee named Ben Hurley. During the month plaintiff and Hurley worked together, Hurley devoted much time to the training and supervision of plaintiff and gave him substantial responsibility.

Hurley was replaced as San Francisco Branch Manager by Dave Myerscough. Plaintiff testified that Myerscough indicated to him that he did not care for the affirmative action program and that he resented persons brought in from outside the corporation and advanced rapidly in preference to long-time employees. In response to a question by the Court, plaintiff said that Myerscough wanted *all Xerox personnel to be treated equally*. Plaintiff's position is that as a black he was entitled to special and preferential treatment not extended to the white employees of Xerox. At no time did plaintiff complain to Xerox officials that Myerscough discriminated against him. However, Myerscough did take away certain of plaintiff's responsibilities, and he failed, according to plaintiff, to spend enough time trying to train him. Plaintiff became dissatisfied

and requested a transfer. On August 25, 1972, he was given a choice of several positions and chose to become a Sales Manager in the Oakland Branch where he began work on October 1, 1972. He performed satisfactorily for a time, but on January 7, 1974, he was placed on "formal warning" for inadequate performance. It was company policy to place on probation sales employees who failed to meet performance standards, and on February 4, 1974, plaintiff was placed on probation for a 60-day period for inadequate performance. This probationary period was extended on March 13, 1974, to April 30, 1974.

On March 19, 1974, plaintiff, together with a white subordinate employee, was suspended from his duties because of his involvement in the submission of an order on which the purported customer's signature had been forged. In most cases employees were not suspended for such actions because it was known to be common practice in the corporation. However, in this instance, plaintiff's superior, the branch manager, was new to the branch and did not know if it was common practice and so, in accordance with company policy, he suspended plaintiff and the white subordinate employee. On March 27, 1974, the suspension was lifted for plaintiff and his subordinate. Plaintiff, however, did not return to work until April 1, 1974, because he wished to consult an attorney.

On April 4, 1974, plaintiff was advised that his period of probation would not be extended beyond April 30, 1974. At that time, plaintiff requested that he be permitted to step down from his position and that he be given other opportunities to work for Xerox. On April 5, 1974, plaintiff announced to his subordinates that he was stepping down from his position as Sales Manager, and on April 26, 1974, plaintiff was offered two other positions, namely, Sales Representative at defendant's Oakland Branch or Sales Representative at defendant's Fresno Branch. Plaintiff refused to ac-

cept either position and during that month left defendant's employ. Plaintiff was paid by Xerox through April 30, 1974, and was given two weeks' vacation pay upon his separation from Xerox. In May, 1974, plaintiff became an employee of Stanford Research Institute where he has been continuously employed to date.

Throughout his employment by Xerox, plaintiff had and exercised the same rights as any white employee of the defendant in entering into and continuing an employment relationship with the defendant. There were no other black middle-management trainees in the affirmative action program in either the San Francisco Branch or the Oakland Branch. The standards against which plaintiff's performance was measured were no more stringent than those applicable to white employees of the defendant. There was no evidence that any employee of the defendant discriminated against the plaintiff in any way, nor is there any evidence that plaintiff suffered any damages as a result of any act or omission of Xerox or any of its employees.

II.

This action alleging racial discrimination in employment was brought under 42 U.S.C. § 1981 which reads as follows:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

■ First adopted as part of the Civil Rights Act of 1866, this section was intended, by authority of the enforcement clause of the Thirteenth Amendment to the United States Constitution, to correct the abuses of slavery and to eradicate its badges and incidents. Resurrected by Justice Stewart in his opinion in *Jones v. Alfred H. Mayer Co.*,[2] 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), the section has been applied by the Supreme Court to private discrimination. *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 439–440, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973). The Fifth and Sixth Circuits have specifically held it applicable to instances of private racial discrimination in employment (*Belt v. Johnson Motor Lines, Inc.*, 458 F.2d 443 (5th Cir. 1972); *Long v. Ford Motor Company*, 496 F.2d 500 (6th Cir. 1974)) and the Ninth Circuit has indicated its agreement. See, *Griffin v. Pacific Maritime Association*, 478 F.2d 1118 (9th Cir. 1973) (dictum), *cert. denied*, 414 U.S. 859, 49 S.Ct. 69, 38 L.Ed.2d 109 (1973).

*Long* is a case very similar on its facts to the case at bar. There the plaintiff was a black, middle-management executive who claimed discrimination on the grounds that the inferior training accorded him under the company's affirmative action program resulted in a violation of his Section 1981 rights. He was successful in persuading the district judge who held:

"If * * * [black] people are not given adequate job training and are, as a result, terminated, then unequal employment opportunity still results. This imbalance is a real factor in racial discrimination. Racial discrimination in employment will not end until such people are given thorough job training so that they can perform adequately. Inadequate job training in a situation such as this fosters racial discrimination. Thus, this court is convinced that race was a factor (pos-

2. See note, *Federal Power to Regulate Private Discrimination: The Revival of the Enforcement Clauses of the Reconstruction Era Amendments*, 74 Col.L.Rev. 449 (1974);

note, *The "New" Thirteenth Amendment: A Preliminary Analysis*, 82 Harv.L.Rev. 1294 (1969).

sibly not the only factor) in the termination of Claude Long." *Long v. Ford Motor Company*, 352 F.Supp. 135, 140 (E.D.Mich.1972).

Sympathetic as this Court may be to the general proposition announced by the district judge in *Long*,[3] it cannot overlook the fact that the proposition was squarely overruled by the court of appeals. Judge Celebrezze held:

"Section 1981 is by its very terms * * * not an affirmative action program. It is an equalizing provision, seeking to ensure that rights do not vary according to race. It does not require that persons be accorded preferential treatment because of their race." 496 F.2d 500, 505.

■ All that Section 1981 requires here is that no person be treated dissimilarly in employment opportunity on account of race. It was intended to secure equal treatment, not preferential treatment, in employment opportunity and other areas to all persons.

■■ The court of appeals also held that the proof and order of proof in a Title VII case as pronounced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is equally applicable to an employment discrimination case brought under Section 1981.[4] Thus, to have proved a *prima facie* case, the plaintiff should have established that the terms of his employment varied from those accorded similarly-situated white employees. The essential element is dissimilar treatment. This he failed

to do. The proof adduced tended to show (1) that plaintiff was hired as part of a voluntarily-adopted affirmative action program; (2) that his performance at Xerox was irregular; (3) that personality disputes, or clashes over beliefs in the efficacy and propriety of affirmative action programs, arose between plaintiff and his white superior; (4) that plaintiff did not advance in the corporation as quickly as he had expected; and (5) deciding that advancement in Xerox was unlikely, plaintiff left defendant's employ.

In no respect did plaintiff establish (1) that his treatment was different from similarly-situated white employees of Xerox; (2) that the terms of his employment varied from the terms of white employees; or (3) that there existed at Xerox a pattern of harassment due to race, a system of discouragement of black advancement, or a showing of preference of whites over blacks. Plaintiff did not prove any specific instances of racial prejudice.[5]

■ To find, as plaintiff would have this Court do, that having voluntarily adopted an affirmative action program, an employer is compelled to maintain it, or else contravene federal law, is to stretch the meaning of 42 U.S.C. § 1981 beyond its proper intendment. This section cannot be construed to place an affirmative obligation on employers to adopt or to maintain affirmative action programs.[6]

Accordingly, the defendant's motion for judgment under Rule 41(b) of the Federal Rules of Civil Procedure is

3. It is clear that if a black or other member of a racial minority is given training inadequate because not equal to that afforded whites, 42 U.S.C. § 1981 may be violated. However, neither in *Long* nor the instant case was this the situation.

4. *Long v. Ford Motor Company, supra*, 496 F.2d at 505 n. 11.

5. Plaintiff did attempt to show that while he was placed on probationary status for failing to meet his sales quota during certain periods, white employees were not. However, the testimony of the plaintiff himself in this

regard was contradicted at several points and it was established that company policy was to place on probation those employees who performed inadequately.

6. It is clear, however, that if a court finds a past scheme of racial prejudice resulting in present employment practices in violation of Section 1981, proper relief may include the institution of a court-ordered affirmative action program. *Castro v. Beecher*, 334 F. Supp. 930, 938 (D.Mass.1971), affirmed in part and reversed in part, 459 F.2d 725 (1st Cir. 1972).

granted. The foregoing Memorandum Opinion constitutes the Findings of Fact and Conclusions of Law required by Rule 52(a) of the Federal Rules of Civil Procedure.

The defendant shall prepare and lodge with this Court by October 10, 1975, a form of judgment in form approved by the plaintiff.