815 F.2d 76
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 John CROOKS, and James Wasarovich, Plaintiffs-Appellants,
v.
Roy RAY, the City of Akron, Joseph P. Wheeler, Ike Gold,
Sidney Foster, Local No. 1360, Tom Sawyer,
Defendants-Appellees.
 
 No. 86-3316.
 United States Court of Appeals, Sixth Circuit.
 Feb. 18, 1987.
 Before KEITH and KENNEDY, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants filed suit alleging that the City of Akron and other defendants (collectively referred to as "defendants") violated their rights under 42 U.S.C. Secs. 1981 and 1983 (1982), and the equal protection clause of the fourteenth amendment to the United States Constitution. Plaintiffs contend that Akron's reclassification and transfer policy which permits employees displaced from their jobs with the city to retain their previous pay level, violated plaintiffs' rights because this policy enabled five white employees to be paid the highest salary within the pay range governing Wastewater Plant Operators without requiring these employees to be certified Treatment System Plant Operators. Plaintiffs will not receive equivalent compensation unless they receive this certification and are promoted to a higher job classification.
 
 
 2
 Plaintiffs, one of whom is black and one white, are employed as Wastewater Treatment Operators by the City of Akron, and are assigned to pay range 21. Pay range 21 is further divided into seven steps, A through G. As employees progress through this range, their salary increases until the final step G is attained. In order for an employee to reach step G, the operator must pass a state examination and obtain a Wastewater Treatment System Operator Certificate from the Ohio Environmental Protection Agency. Neither plantiff has obtained this Certificate.[1]
 
 
 3
 Both plaintiffs were previously employed as treatment plant utility workers and passed a promotional exam entitling them to work as Plant Operators. Crooks, a black employee, was promoted to an operator at step C, while Wasarovich, a white employee, was placed at step D. Wasarovich was placed one step above Crooks pursuant to the reclassification and transfer policy, the policy at issue in the present case, because his previous salary as a treatment plant utility worker exceeded the salary of a step C employee. Akron's policy regarding reclassification and transfer of civil service employees is described in part in Civil Service Rule 1, Section 2. This Section provides:
 
 
 4
 Except for transfers into or between the police or fire sworn services, employees transferring from one class to another within the same range and salary schedule retain their current pay rate and merit increase date.
 
 
 5
 See Joint Appendix at 24.
 
 
 6
 Prior to January 1982, the City of Akron had a classification called Diesel Zimpro Operator, and these operators worked at the City's treatment facility. This classification was also assigned to pay range 21. In 1976, the City converted the diesel equipment to electricity and allowed the Diesel Zimpro Operators to fill in for Wastewater Plant Operators, while retaining their classification title. Defendant Local No. 1360 approved of this practice. In January 1982, the City eliminated the Diesel Zimpro Operator Classification. The restructuring provided that the Diesel Zimpro Operators employed as Wastewater Plant Operators retained their Diesel Zimpro Operator classification until they completed a state examination and received their Treatment System Operator Certification. If they failed to obtain such a certificate, they could not advance in the salary range. However, pursuant to the civil service reclassification and transfer policy, five employees continued to receive the same compensation they received as Diesel Zimpro Operators, which was the top pay rate in range 21. Thus, the civil service policy of not decreasing a person's pay upon transfer or reclassification created the situation of having individuals who have not passed the state certification examination receiving the highest pay, while plaintiffs cannot attain this level without fulfilling the requirements of Class I certification.
 
 
 7
 In their Brief in Response to Defendants' Motion for Summary Judgment, plaintiffs contended that defendants, in an effort to save the Diesel Zimpro Operators' jobs, broke from their established promotional policies and arbitrarily reassigned these operators to Wastewater Plant Operators at a step G pay scale. In support of their section 1983 claim, plaintiffs argued that defendants did not follow the policy of requiring the successful completion of the state certification examination in order for an employee to work as a Wastewater Plant Operator and receive the maximum rate of pay. Plaintiffs contended that defendants acted under color of state law and this practice constituted an arbitrary classification that infringed upon their job security and seniority rights.
 
 
 8
 In support of their section 1981 claim, plaintiffs contended that the certification examination had a disqualifying effect on unlicensed Wastewater Plant Operators by preventing those who did not pass the examination from receiving the highest level of pay. Plaintiffs contended that defendants' intent to discriminate was evident from the discriminatory impact of the policy. According to plaintiffs, only five of the seventeen Wastewater Plant Operators receiving the top pay rate passed the certification examination. Furthermore, plaintiffs asserted that defendants had not shown that this examination was a professionally validated test correlated to the work of a Wastewater Plant Operator and the examination was a pretext for discrimination.[2] Finally, plaintiffs contended that all of the former Diesel Zimpro Operators were white and were being paid at step G without having passed the certification examination. They, on the other hand, were denied promotion to this level because they did not successfully complete this examination.
 
 
 9
 The District Court concluded that plaintiffs' section 1983 claim appeared to be based on an alleged denial of some property interest in their employment position and their inability to advance in pay to step G without the successful completion of the certification examination. The Court also noted that while plaintiff Wasarovich could not claim to be a member of a protected class, both plaintiffs contended that they had a cause of action under section 1981 based on the civil service policy of reclassifying employees according to their rate of pay (at oral argument counsel for plaintiffs stated that the 1981 claim was made only on behalf of Crooks).
 
 
 10
 The District Court granted defendants' motion for summary judgment because nothing in the record indicated an intent to discriminate through the civil service transfer and reclassification policy that protected employees from pay decreases upon job transfer or reclassification. Additionally, the Court noted that there was no indication that this civil service rule was applied unequally among workers depending on their race. The Court also noted that plaintiffs failed to support their allegations of racial discrimination.[3] Finally, the Court concluded that although the situation might suggest that certification is not a necessary job requirement for promotion within pay range 21, but is being used to prevent minority employees from advancing, plaintiffs did not contest the certification examination.
 
 
 11
 On appeal, plaintiffs contend that the District Court erred in concluding that nothing in the record indicated an intent to discriminate. Plaintiffs again contend that they are entitled to the protection of sections 1981 and 1983 because more stringent requirements were placed upon them in order to attain the step G pay rate. Plaintiffs also contend that the civil service reclassification and transfer policy has no rational basis, and thus denies equal protection.[4]
 
 
 12
 Defendants assert that there is no indication that the civil service rule that protects the salaries of transferred employees was adopted with an intent to discriminate or was applied unequally among workers depending on their race. Defendants cite Ogletree v. McNamara, 449 F.2d 93 (6th Cir. 1971), where this Court stated:
 
 
 13
 Liberal as are the federal rules of pleading, something more than conclusory allegation of systematic racial discrimination is required. Some facts as to when, how, to whom, and with what results such discrimination has been applied would seem a minimum [requirement] for "a short and plain statement of the grounds upon which the court's jurisdiction depends."
 
 
 14
 Id. at 98 (citing Fed. R. Civ. P. 8(a)). In addition, defendants rely on Long v. Ford Motor Co., 496 F.2d 500 (6th Cir. 1974). In Long, this Court stated that in a 1981 action, plaintiff "must first establish that his employment terms vary from those which his employer accords similarly situated white workers." Id. at 505.
 
 
 15
 The District Court correctly noted that in a summary judgment action, the burden is on the moving party to establish that no genuine issue of material fact exists, and that materials submitted in connection with the motion must be viewed in a light most favorable to the party opposing the motion. Additionally, the party opposing the motion should be given the benefit of all inferences that reasonably can be deduced from the evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Nevertheless, the existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). Thus, this Court's review of the District Court's grant of defendants' motion focuses on whether genuine issues of material fact preclude dismissal of the case.
 
 
 16
 In an action based upon section 1981, plaintiffs must demonstrate that defendants intentionally placed more stringent requirements on them because of their race. See Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 69 (6th Cir. 1985) (citing a General Building Contractors Assoc., Inc. v. Pennsylvania, 458 U.S. 375 (1982)); Long v. Ford Motor Co., 496 F.2d 500, 505 (6th Cir. 1974). In addition, plaintiffs must show that their "unemployment terms vary from those which [their] employer accords to similarly situated white workers." Long, 496 F.2d at 505.
 
 
 17
 The District Court correctly dismissed Crooks' section 1981 claim. Crooks failed to allege any facts that support his allegation that the civil service transfer and reclassification policy was adopted to intentionally place on black employees more stringent requirements for promotion because of their race. With respect to defendants' intent to discriminate, plaintiffs allege that this intent is evident from the discriminatory effect of the reclassification and transfer policy: only five of the seventeen Wastewater Plant Operators receiving pay corresponding to step G have passed the certification examination. Furthermore, in response to defendant Union's allegation that it did not intend to discriminate on the basis of race when it approved of the policy, plaintiffs state that a person is presumed to intend the foreseeable consequences of his acts. These conclusory allegations of defendants' intent to discriminate fail to comply with the standard enunciated in Ogletree.
 
 
 18
 Where plaintiff presents no direct or circumstantial evidence of intentional racial discrimination in support of a section 1981 claim, summary judgment is appropriate. In Murray v. Thistledown Racing Club, Inc., 770 F.2d 63 (6th Cir. 1985), for example, a white employee instituted a reverse discrimination claim against her former employee, and claimed that there were genuine issues of material fact precluding the district court's grant of summary judgment for defendant. Plaintiff was employed as a money handler at defendant's racetrack. On several occasions, she had the highest money shortages of all the clerks, although, pursuant to the racetrack's rules, she always repaid her shortages before beginning work the next day. Because of these shortages, her employer requested that she sign a statement acknowledging that she had been warned about these shortages and that she recognized that she could be terminated for future shortages. She chose not to sign this statment and left the racetrack.
 
 
 19
 Plaintiff filed a section 1981 action alleging that her employer did not ask four black clerks who also had shortages to sign such a statement. She also alleged that the racetrack did not impose this requirement on these black workers because it was afraid that they would claim they were targets of discrimination. The racetrack justified its action by emphasizing that plaintiff's shortages exceeded those of the four black employees. This Court affirmed the district court's grant of summary judgment for defendant because plaintiff presented no evidence of intentional racial discrimination. Id. at 69.
 
 
 20
 As discussed above, in the present case, plaintiff Crooks did not provide any support for his allegation that the policy was adopted to intentionally place on black employees more stringent requirements for promotion because of their race. The white employees already in the department were in the same position as Crooks. They could not reach an increased pay level without passing the examination. Thus, viewing the materials in a light most favorable to plaintiffs, we conclude that there is no genuine issue of material fact.
 
 
 21
 Plaintiffs' section 1983 claim suffers from the same deficiency. In their brief in opposition to defendants' motion for summary judgment, plaintiffs did not even mention a property interest in receiving the top pay in range 21 without certification. More importantly, plaintiffs' complaint failed to outline the elements of their section 1983 claim and did not even provide sufficient information for the district court to draw inferences concerning this claim. Thus, we conclude that the District Court correctly granted defendants' motion for summary judgment with respect to plaintiffs' section 1983 claim.
 
 
 22
 Plaintiffs also contend that the reclassification and transfer policy cannot survive a rational basis test. According to plaintiffs, a more rational policy would be for reassigned workers to receive equal or higher pay rate only if they meet the requirements of the new position. Nevertheless, although defendants did not articulate a rational basis for the reclassification and transfer policy, one can easily be imagined. Without such a policy, the Union and its members would be more likely to resist any reclassification or transfer, thus impeding the City's efforts to reorganize to promote efficiency.
 
 
 23
 Accordingly, the decision of the District Court is affirmed.
 
 
 
 [1]
 As the District Court pointed out, it is unclear whether both plaintiffs have taken the examination necessary to obtain this certification. It is undisputed, however, that neither plaintiff has successfully completed this examination
 
 
 [2]
 At trial, plaintiffs conceded that they were not challenging the validity of the state certification examination
 
 
 [3]
 The Court noted that plaintiffs did not cite a single instance where the civil service rule was arbitrarily ignored to deny a minority class member the rule's protection upon reclassification or transfer to another job
 
 
 [4]
 In their Reply Brief, plaintiffs contend that the Union arbitrarily infringed upon their constitutional rights because it approved of the City's reclassification policies, and it was foreseeable to the Union that these policies would have a discriminatory effect