Sandra Richardson SMITH, Plaintiff-Appellant,

v.

PAN AM WORLD AIRWAYS, Defendant-Appellee.

No. 81–1548.

United States Court of Appeals, Sixth Circuit.

Submitted on Briefs April 13, 1983.

Decided May 19, 1983.

Carl R. Edwards, Detroit, Mich., for plaintiff-appellant.

Donald B. Miller, Detroit, Mich., for defendant-appellee.

Before MARTIN and CONTIE, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

During an October 9, 1977 Pan American World Airways flight from London to Chicago, Guy Richard, a white male flight purser, allegedly referred to Sandra R. Smith, a black flight attendant, in a racially derogatory manner and attempted to strike her. That allegation forms the gravamen of Smith's complaint against Pan Am for racial discrimination in employment in violation of 42 U.S.C. § 1981. The district court granted Pan Am's motion for summary judgment. We affirm.

We have difficulty in grasping the essence of Smith's claim. Essentially, she seems to say that Richard, a Pan Am employee, insulted her, that the insult had racial overtones, that Pan Am failed to discipline Richard or to take adequate precautions to insure that persons with racist attitudes were not hired, and that in so failing, Pan Am breached a duty of "ordinary care and caution" it owed to her and deprived her of "employment opportunity" in violation of 42 U.S.C. § 1981. To briefly recount other relevant facts, shortly after the October 9 incident, Smith sent a letter to Pan Am management representatives, including its director of equal employment opportunity, describing the incident. Not in that letter, nor in oral remarks to company representatives, nor in a subsequently filed complaint with the EEOC did Smith claim that Richard's otherwise derogatory statement contained a reference to her race. Her letter closed by stating that Richard was "lax" about emergency procedures, reluctant to make passenger announcements, and gossip-prone and suggesting that if, as Richard had apparently stated to her, he was sick, he should retire.

Introduced into evidence were a number of letters from Pan Am to Smith and vice versa. They indicate that the airline, proceeding under the innocent assumption, based upon Smith's own complaint, that Richard's statement contained no reference to race, made a diligent attempt to fully investigate the incident. Included in its efforts were interviews with the other flight attendants and with Richard. The latter admitted making the racially neutral statement attributed to him by Smith in her letter to the company. He also admitted that his behavior was unprofessional and ungentlemanly.

The airline made several unsuccessful attempts to arrange a hearing for Smith before company representatives. On each occasion, Smith, on her attorney's advice, refused to attend because Richard would not be present. Although it is unclear precisely what Smith expected of the company, it is clear that by April 5, 1978, she had not received it. On that date, she filed an EEOC complaint. In her complaint, she repeated virtually verbatim the description of events contained in her first letter to Pan Am. Again she quoted the derogatory, but racially neutral, version of Richard's remark. However, she concluded by stating that she felt she had been "harassed" because of her race and her sex. As evidence, she alleged that "similar problems" had developed between Richard and other black female employees, that she was the only black on the October 9 flight, and that she had "mailed letters" to Pan Am "and they have not disciplined Mr. Richard." It is not clear from the record before us the precise official disposition of that complaint. In her brief to this court, however, Smith states that an "investigation and a settlement conference" took place, but "failed to resolve [her] grievance."

On May 27, 1980, Smith filed this suit alleging that Pan Am "deprived her of employment opportunity because of sex, race and color, all in violation of 42 U.S.C. § 1981 and MCLA 37.2101, § 201(1)(b)." In her complaint, she for the first time charges that Richard's comment explicitly referred to her race. Following oral argument, the district court granted Pan Am's motion for summary judgment and dismissed the pendent state claims. It also dismissed the sexual discrimination claim, holding that section 1981 is not a vehicle for remedying sex-based discrimination. Summary judgment was appropriate for the racial discrimination claim, it held, for two reasons. First, the EEOC had had no opportunity to mediate the claim. Second, Pan Am, it found, could not "be charged with having imposed any disparity of treatment in terms and conditions [of Smith's employment] under the circumstances of this case." As to this second ground, the court found that Richard was Smith's "co-equal," with no authority to "hire, fire, promote or demote the plaintiff." Furthermore, it found that by not informing Pan Am of Richard's exact words until the filing of this suit, she had not given the company an opportunity to correct any injury she may have suffered. Finally, it found no evidence of "adverse employment action whatsoever" by Pan Am, no repetition, no prior history of similar events, and nothing to indicate the airline condoned the purser's remarks.

The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine if there is a genuine need for a trial. *Bryant v. Commonwealth of Kentucky,* 490 F.2d 1273, 1275 (6th Cir.1974). It is only appropriate, however, when no material facts are in dispute, Fed.R.Civ.P. 56(c); *Fitzke v. Shappell,* 468 F.2d 1072, 1074 (6th Cir.1972), and when those facts, when viewed in the light most favorable to the non-moving party, entitle the moving party to judgment as a matter of law. *Willetts v. Ford Motor Co.,* 583 F.2d 852, 855 (6th Cir.1978). We think Pan Am, the moving party, has met its burden here.

Section 1981 prohibits racial discrimination in employment, public or private.

*Johnson v. Railway Express Co.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975); *Long v. Ford Motor Co.,* 496 F.2d 500, 504 (6th Cir.1974). To support her case under 1981, Smith had to prove not only that Pan Am treated her differently than its white employees, *Long,* but that this disparate treatment was the result of discriminatory purpose. *General Building Contractors v. Pennsylvania,* —— U.S. ——, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

Unless Richard's remarks are imputed to Pan Am on an agency theory, there is no evidence in the record, apart from Smith's conclusory statements about "job-related" problems, of any racial animus or discriminatory purpose on Pan Am's part. Indeed, even the "job-related" problems she mentions in her deposition—difficulty in obtaining payment for overtime and expenses and Pan Am's refusal to extend her one year maternity leave to eighteen months—she admits are not problems necessarily unique to her or other black employees. As to the refusal to extend her maternity leave, although she claimed in her deposition to know other employees who had been given an extra six months personal leave, she produced no evidence to support this statement or to support the allegation that failure to extend her leave was a result of her race. Nor does Pan Am's alleged failure to "discipline" Richard imply discrimination against Smith. First, Pan Am was unaware, until this suit, just precisely for what it was that Smith would have them discipline Richard. Second, it is evident from the record that Pan Am thoroughly investigated the matter and determined, at the very least, that there were two sides to the story. Thirdly and most importantly, there is no attempt on Smith's part to prove that, in her case, Pan Am had departed from a past practice of disciplining employees for conduct such as Richard's. Quite simply then, there is no credible evidence of discriminatory purpose. Moreover, to the extent that purpose may be circumstantially proven by evidence of treatment, there is simply no evidence that Smith was treated

any differently than anybody else in the employ of Pan Am in the handling of her complaint, the payment of expenses, or the matter of maternity leave.

In her brief, Smith advances a *respondeat superior* theory to link Richard's action to Pan Am. Apart from the fact that we find this argument, given Smith and Richard's relative positions, unconvincing, we fail to see the utility in such a connection. Even if we impute the purser's remarks to Pan Am's president, we are still unable to detect any act of discrimination. As Pan Am said in its brief, this incident was quite obviously a "personality clash" between fellow employees from which section 1981 provides no protection.

To the extent the district court based its decision on Smith's failure to pursue EEOC remedies, we reverse. Title VII and section 1981 are "separate, distinct, and independent." Exhaustion of the former is not a prerequisite for resort to the latter. *Johnson,* 421 U.S. at 461, 95 S.Ct. at 1720. For the reasons set out above, however, we affirm the judgment of the district court.