William A. LUCAS, Jr., et al., Plaintiffs,

v.

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL & ORNAMENTAL IRON WORKERS, et al., Defendants.

No. C 84–7005.

United States District Court, N.D. Ohio, W.D.

July 28, 1989.

Harland M. Britz, Britz & Zemmelman, Toledo, Ohio, for plaintiffs.

Jeffrey Julius, Gallon, Kalniz & Iorio, Toledo, Ohio, for defendants.

## OPINION AND ORDER

WALINSKI, Senior District Judge.

This cause is before the Court pursuant to defendants, International Association of Bridge, Structural and Ornamental Ironworkers, et al., ("the Union"), motion for summary judgment, plaintiffs', William A. Lucas Jr., et al., opposition thereto, and defendants' reply. Jurisdiction is based upon Title 42 U.S.C. § 2000e. For the following reasons, defendants' motion is well taken.

## BACKGROUND

Plaintiffs are members of defendant Union. They claim that the hiring system, employed by the Union, operates in a discriminatory fashion against black ironworkers, in violation of Title VII of the Civil Rights Act of 1964.

A member of the ironworkers' union may find employment in one of three ways. The first of these, the referral system, has been the main focus of plaintiffs' complaint. Although, as they have pointed out, their grievance is with the entire hiring method, not just the referral system. The Union has operated a referral system for a number of years, whereby employers who are subject to the collective bargaining agreements may obtain ironworkers in accordance with their needs. However, as will be demonstrated, this is not the only method by which employers can acquire the necessary manpower. In order to be eligible for the referral system an individual must sign an out-of-work book. Upon signing the register the worker's name is placed at the bottom of the list. As employers request workers, the Union refers those listed on the register in the successive order that their names appear thereon. To be eligible for employment, as a result of the referral board, the individual must be present in the Union's dispatch area and must have signed in that day noting his or her availability to work.

Further, employers may request certain workers who maintain specialized skills or licenses pursuant to the referral board. When this occurs, the Union assigns those workers who possess such skills and whose names appear on the referral board in successive order. To be eligible for these special skill referrals the individual must notify the Union and declare that he posseses certain specific skills.

Once the individual is notified that a request has been made and that work is available he or she has the option to accept or reject any referral. If the referral is accepted and the work consists of eight hours or more, the workers name is removed from the referral board. As such, some workers turn down short term work in the hopes of a longer assignment.

As mentioned earlier, the referral system is not the exclusive means by which ironworkers may obtain employment. In addition to calling the Union for a certain number of workers, an employer may call the union and request a specific worker or workers by name.

Last, any individual ironworker may pursue employment with employers, bound by the collective bargaining agreement, through their own efforts. The referral

system plays no part in obtaining employment through either of the last two methods.

Neither plaintiff can identify any instance where they were denied signing the referral book. Nor can they show any evidence which indicates that the aforementioned systems of obtaining employment were not routinely followed. Nevertheless, plaintiffs now claim that more white ironworkers are employed than black and that this is a violation of the 1964 Civil Rights Act. Plaintiffs base their case almost solely upon a test performed by Professor Charles Davis, of the University of Toledo, which purports to demonstrate that, during the pertinent period, blacks worked 71% of the hours worked by whites.

The case was referred to a Special Master pursuant to 42 U.S.C. § 2000e–5(f)(5). The Special Master recommended granting defendants' motion for summary judgment. The Master based his decision upon plaintiffs lack of causal proof. The Special Master believed· plaintiffs failed to meet their threshold burden of identifying specific employment practices which have an adverse impact on plaintiffs. Nor did plaintiffs show any liability based on the Union's acquiescence to discriminatory practices. Last, the Special Master pointed out the completely non-discriminatory method by which the referral board is operated. In addition, the report noted that the other two hiring procedures are based upon subjective methods which the Union has no control over.

Plaintiffs objected to the Special Master's report stating that the report failed to realize that plaintiffs were not only challenging the referral board but all three hiring methods in conjunction with one another. Plaintiffs also object to the Special Master not addressing the layoff procedures nor the case of *Eldredge v. Carpenters 46 N.Cal. Counties JATC*, 833 F.2d 1334 (9th Cir.1987), which speaks of Union liability based upon acquiescence to discriminatory practices.

This Court had a hearing on the objections to the Special Master's report on June 6, 1989. This opinion is thus based upon the parties written motions and the oral hearing.

## DISCUSSION

Rule 56, Fed.R.Civ.P., directs the disposition of a motion for summary judgment. In relevant part Rule 56(c) states:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The Court's function in ruling on a motion for summary judgment is to determine if any genuine issue exists for trial, not to resolve any factual issues, and to deny summary judgment if material facts are in dispute. *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir.1976); *Tee–Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1195 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the evidence must be viewed in a light most favorable to the party opposing the motion." *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983). To summarize, summary judgment is only appropriate when no genuine issue of material fact remains to be decided, and when the undisputed facts, viewed in a light most favorable to the non-moving party, entitle the movant to judgment as a matter of law. *Smith v. Pan Am World Airways*, 706 F.2d 771, 773 (6th Cir.1983).

A principle purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision. In relevant part the provision states:

When a motion for summary judgment is made and supported as provided in this

rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), Fed.R.Civ.P. Rule 56(e) requires the nonmoving party to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for a labor organization to do any of the following:

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2) to limit, segregate, or classify its membership or applicants for membership, or to clasify or fail to refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Section 703(c)(1) and (2) of Title VII, 42 U.S.C. §§ 2000e–2(c) and 2000e–2(c)(2).

As defendants have noted, plaintiffs seem to be bringing this cause of action pursuant to a "disparate impact" analysis.[1] Such cases challenge practices or procedures neutral on their face, and even neutral in terms of intent, if they operate in a discriminatory fashion. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1970).

Rather, the necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory nature, may in operation be functionally equivalent to intentional discrimination.

*Watson v. Ft. Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 2785, 101 L.Ed.2d 827 (1988).

■ Disparate impact cases require the plaintiff to identify the specific employment technique which allegedly has a discriminatory effect. *Watson*, 487 U.S. 977, 108 S.Ct. 2777 (1988). In addition, the plaintiff must show that the specific employment practice, identified by plaintiff, causes an adverse impact on plaintiff. *Id.* In other words, plaintiff must "offer statistical evidence of a kind and degree sufficient to show the practice in question has caused the exclusion of application for jobs or promotions because of their membership in a protected group." *Id.*[2]

■ This Court will now consider whether or not plaintiff has demonstrated a prima facie case of discrimination, based on the hiring methods as a whole, or whether plaintiffs' evidence falls short of showing any fault on the Union's behalf thus entitling defendants to summary judgment.

In the case *sub judice*, plaintiffs' "expert," Dr. Charles B. Davis conducted tests which purport to show that a disparity exists betwen the amount of hours worked by black workers and all other ironworkers. Whether a specific statistical analysis carries the plaintiffs' ultimate burden will depend on the unique facts of each case, seen in light of all the evidence presented by both parties. *Bazemore v. Friday*, 478

---

1. There are generaly two theories of liability under Title VII, disparate treatment and disparate impact. Disparate treatment analysis requires a discriminatory motive. Plaintiffs, however, have produced no evidence to lead this Court to believe they are choosing this line of prosecution, but instead, have offered proof consistent with the disparate impact analysis. Thus, the Court will proceed pursuant to that theory.

2. Once plaintiff has proved a prima facie case, the defendant must show that the practice in question is explained by a legitimate business necessity. *See Albermarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1979). However, this court will not go beyond the requirements for a prima facie case, as plaintiff has failed to prove the basic elements necessary for the case to go forward.

U.S. 385, 400, 106 S.Ct. 3000, 3008, 92 L.Ed.2d 315 (1986).

Plaintiffs contend that the four-fifths rule, as promulgated by the EEOC's uniform guidelines on Employee Selection Procedures, 29 CFR 1607 (1987) indicates that where it has been established an ethnic group is selected at a rate that is less than four-fifths of the rate at which the group with the highest rate is selected, summary judgment is inappropriate. 29 CFR 1607.-4(D) (1987). *See also Teamsters v. United States,* 431 U.S. 324, 340, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977). We disagree. The court in *Hameed v. International Association of Bridge, Structural and Ornamental Iron Workers, Local Union No. 396,* 637 F.2d 506 (8th Cir.1980), held that where a plaintiff relied upon the total hours accumulated by ironworkers of different races in an effort to show that a union's referral practice had a discriminatory effect, such data failed to demonstrate how blacks were affected by the practice.[3]

Not only have plaintiffs failed to show that the referral system is discriminatory, but they have also failed to show that all three hiring systems, viewed together, operate in a discriminatory fashion towards blacks. Dr. Davis' report simply reveals that black ironworkers work a disproportionate number of hours as compared to other ironworkers.[4] The number of hours an ironworker may accumulate are intimately entwined with a number of significant variables, for instance, special skills, willingness to work, aggressiveness in self-solicitation etc. In short, there are too many unanswered factors to give weight to the present statistics.

Plaintiffs cannot show any instances where a black ironworker was denied access to the referral or any other job hiring

system. Nor can they show any evidence which indicates that all systems are not properly followed. The plaintiffs allege that white workers are called to work more often than blacks. The only "calling" the union does is in the form of the referral board. However, plaintiffs have failed to show what it is about the referral system that is discriminatory. Thus, plaintiffs have failed to show that the referral system has caused the exclusion of ironworkers because of their race. Consequently, plaintiffs have failed to show cause, a necessary element of this Title VII case.

Plaintiffs also contend that if the other two systems of hiring workers is practiced in a discriminatory fashion the Union should be held responsible.[5] Plaintiffs rely on *Eldredge v. Carpenters 46 N.Cal. Counties JATC,* 833 F.2d 1334 (9th Cir. 1987) to show that acquiesence on the part of a union involving discriminatory hiring practices will result in the Union's liability. *See also EEOC v. Detriot Edison,* 515 F.2d 301 (6th Cir.1975). However, not only is there no proof of acquiesence on the part of the Union in the present case, *Eldredge* is completely distinguishable. In *Eldredge* the union delegated the power to select and license apprentices to private employees, a practice traditionally belonging to the unions. The court found discriminatory practices and held the union liable stating that the union "cannot avoid liability for the effects of its own admission procedures by pointing to the discriminatory practices of those to whom it has delegated the power to select apprentices." *Eldredge,* at 1337.

First, this Court has found no proof of discrimination in the referral policy nor in the other two practices of hiring (self solicitation and employer solicitation). Second,

---

**3.** Although *Hameed* was a case based upon discriminatory effect, the Court logically analyzed data of this type and found that the statistics failed to take into account a number of variables. As a result, the test failed to show that any black person was actually adversely affected. *Id.* at 516.

**4.** This alone does not violate Title VII. "Title VII ... does not impose a duty to adopt a hiring procedure that maximizes hiring of minority employees." *Furnco Construction Co. v. Waters,*

438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978).

**5.** Plaintiffs, at the last minute, also contend that layoffs are racially based. However, there is absolutely no evidence to indicate so. Furthermore, without proof to show that the union is somehow responsible directly or indirectly for layoff procedures this Court cannot find them liable.

unlike *Eldredge* the union here has not acquiesced to discriminatory decisions that are traditionally made by them.

In conclusion, this Court finds that plaintiff has failed to show a specific employment practice which causes a discriminatory impact on black workers. Thus, plaintiffs have failed to demonstrate a prima facie case resulting in a favorable ruling on defendants' summary judgment.

It is therefore,

ORDERED that defendants' motion for summary judgment is hereby granted and this case is dismissed.