**Rachel LEWIS, Plaintiff,**

v.

**Everett RUCKER d/b/a Everett Rucker Insurance Agency, Defendant.**

**No. C-1-88-257.**

United States District Court,
S.D. Ohio, W.D.

Aug. 30, 1989.

Robert B. Newman, Cincinnati, Ohio and Adm'r of Ohio Bur. of Employment Services, James John Schubert, Asst. Atty. Gen., Columbus, Ohio, for plaintiff.

Ivan L. Tamarkin, Cincinnati, Ohio, for defendant.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court pursuant to a two day trial to the Court at which both parties presented witnesses, trial exhibits and argument. Plaintiff's Complaint alleges a cause of action for race discrimination in violation of Title 42 U.S.C. § 1981. On the basis of the evidence, testimony and argument presented by the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

Plaintiff, Rachel Lewis, is a person of the black race who worked for Everett Rucker Insurance Agency in different capacities between February, 1986 and September, 1987. Defendant Everett Rucker is a person of the black race who began his State Farm Insurance Agency in St. Bernard, Cincinnati, Ohio in 1982. Defendant and his Agency remain in business as of the date of this trial.

The City of St. Bernard in Cincinnati, Ohio is predominantly inhabited by white residents.

Defendant hired Brenda Allen, a person of the black race, in August, 1985 as his principal office employee. During Ms. Allen's employment, defendant had conversations with her regarding his desire to hire white people to staff his office because it would be good for business in light of the fact that he was located in a predominantly white area of Cincinnati. These conversations continued after plaintiff was employed and plaintiff confirmed that defendant had stated his intention to hire whites during her part-time employment.

Defendant had had no experience of losing any business because of the fact that he was black and affirmed that he had no complaints from any white customers because his employees were black. No one at State Farm had suggested that he hire white employees or that he set up his office personnel in any particular manner.

In February, 1986 defendant expanded his office operation from a one person to a two person staff. The plaintiff was hired on a part-time basis at that time. From time to time, defendant employed a number of casual employees who worked on special matters, however, the principal office staff remained a two-person staff after February, 1986 to the date of trial.

After plaintiff's hiring, the next employee to be hired was an Asian, Azad Shawki, who was hired as a full-time employee to take pictures and to develop business. Mr. Shawki worked for defendant for three months and was then laid off due to lack of work and lack of production.

In the first week of February, 1987, defendant hired a black employee, Betty Penn, to do some of plaintiff's work so that plaintiff could concentrate on sales. Mrs. Penn was terminated after approximately three weeks because of absenteeism.

After Mrs. Penn's termination, defendant hired a white employee, Candee Adams. The hiring of Ms. Adams on or about March 24, 1987 was done through advertisement in the Cincinnati Enquirer and after interviewing several applicants. Ms. Adams was well qualified for the position and was hired as a full-time employee to handle the duties that had been given to Mrs. Penn in the office. Plaintiff continued to work part-time.

Defendant then hired a white employee, Gloria Couch (f/k/a Schnicke), who worked approximately two months as a part-time employee doing some of the same work as plaintiff. Due to lack of funds, Ms. Couch was laid off in August, 1987 at which time plaintiff continued to work part-time.

In March of 1987, Ms. Allen, who was designated as the office manager, was pregnant and was planning to go on an agreed two-month paid pregnancy leave. It was at this time that defendant hired Ms. Adams to be trained and to take Ms. Allen's place during her pregnancy leave.

In June, 1987, defendant terminated Ms. Allen before she left on her pregnancy leave. Ms. Allen had worked for defendant for a period of approximately two years and, during that time, was a very competent, independent and self-sufficient employee. There were, however, differences of opinion between defendant and Ms. Allen regarding her role in the office and defendant stated that he was upset about Ms. Allen's tone of voice and attitude regarding a customer service matter and defendant felt that Ms. Allen was insubordinate.

When Ms. Adams was hired, plaintiff's workplace, which had been visible to customers in the lobby, was changed to a place around the corner and behind a wall and Ms. Adams took plaintiff's desk where she was visible to the customers. Shortly thereafter, Ms. Adams was made the office manager.

Prior to September 1, 1987, plaintiff had always worked in a part-time position. On September 1, 1987, defendant promoted plaintiff to a full-time position.

The relationship between Ms. Adams and plaintiff was a tense and combative one. Plaintiff challenged the younger Ms. Adams on several occasions with issues including the proper title by which Ms. Adams should address plaintiff, the prohibition of Ms. Adams' smoking in the office, and Ms. Adams' denial of access to plaintiff to an office drawer.

Plaintiff also had difficulties in her relationships with Ms. Penn during her employment as well as with defendant. Plaintiff had raised her voice to defendant at least twice during her employment and engaged in arguments with him concerning towing bills submitted for her own automobile. Plaintiff also had problems in her relationship with Ms. Allen; plaintiff had complained to Ms. Adams about Ms. Allen and Ms. Allen had complained to defendant about plaintiff.

On September 28, 1987, Ms. Adams went to defendant and told him that she could not deal with the stress created in the office by plaintiff and she offered to resign with a 30 day notice. Ms. Adams told defendant that he could either terminate plaintiff or that she would have to quit. Defendant told Ms. Adams that he wanted to talk to plaintiff and he understood that a critical problem did exist.

In his consideration of whom to terminate, defendant talked to his regional director at State Farm, Jeff Vanderhyden, after which he made the decision to terminate plaintiff.

Defendant considered it a "close call" as to which of the two employees was more valuable. He recognized, however, that there was no possibility to mediate the conflict between the two and that it was necessary to terminate one and retain the other. Significantly, plaintiff's inability to establish and maintain friendly working relationships with so many of her co-workers was the determining factor in his decision.

Plaintiff demonstrated a resentment of the fact that other employees were hired in positions of greater authority, more responsibility and on full-time status. In spite of the fact that on or about March 1, 1987, defendant asked plaintiff at a regular staff meeting if she could work a full-time schedule and plaintiff explained that she could not because of medical problems.

On the other hand, Ms. Adams was a full-time employee with more current insurance knowledge, a better working relationship with others, and a demonstrated ability to handle the computer and paperwork. In addition, no clients had complained about their dealings with Ms. Adams, while at least two clients who testified, Debra

Hawkins and Robert Wagner, described negative experiences in their dealings with plaintiff.

After her termination, plaintiff applied for unemployment and the Ohio Bureau of Employment Services found that plaintiff was discharged by defendant because employees could not get along with each other.

Shortly after plaintiff was terminated, Gloria Couch was again hired by defendant because she had experience in his office and knew the business. Ms. Couch and Ms. Adams worked for defendant for approximately six months when Ms. Adams left defendant's agency. Defendant then hired a black employee, Hazel Solomon, and defendant's current staff consists of a black employee (Solomon) and a white employee (Couch). Defendant has also hired numerous independent contractors to help in his business, all of whom were black.

### Conclusions of Law

Section 1981 of Title 42 United States Code prohibits racial discrimination in public or private employment. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975); *Smith v. Pan Am World Airways*, 706 F.2d 771, 773 (6th Cir.1983).

Section 1981, provides:

*Equal Rights Under the Law*

All persons within the the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Under this law, plaintiff bears the burden of proving by a preponderance of the evidence that defendant intentionally or purposefully discriminated against her because of her race. *General Building Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Plaintiff must prove by a preponderance of the evidence that defendant treated her differently than he treated his white employees and that this disparate treatment was a result of discriminatory purpose. *Smith*, 706 F.2d at 773; *Leonard v. City of Frankfort Electric & Water Plant Bd.*, 752 F.2d 189, 193 (6th Cir.1985).

■ To enforce her right not to be discriminated against in private employment, plaintiff must show that she was unable to make or enforce a contract that white citizens were able to make or enforce. *Long v. Ford Motor Co.*, 496 F.2d 500, 504 (6th Cir.1974). "Section 1981 is by its very terms, however, not an affirmative action program. It is an equalizing provision, seeking to ensure that rights do not vary according to race. It does not require that persons be accorded preferential treatment because of their race." *Id.* at 505. Plaintiff must establish that her employment terms varied from those which defendant accorded to similarly situated white workers and that there was no legitimate, nondiscriminatory reason for defendant's decision. *Id.* at 505–506.

■ An employer has the discretion to make employment decisions as long as he or she does not discriminate on the basis of race. The law does not require employers to make perfect employment decisions and a business has a right to be wrong in the handling of employees so long as the business does not discriminate on the basis of race. See *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir.), *reh. den.*, 797 F.2d 342 (1986); see also, *Pollard v. Rea, Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.), *cert. den*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

■ Unless other employees of defendant who were allegedly treated differently were similarly situated with plaintiff, evidence of defendant's treatment of the other employees produces no implication of race discrimination by defendant. While the law does not require precise equivalents in determining which employees may properly be compared to a plaintiff, it is necessary

for plaintiff to establish that the circumstances surrounding the employees be substantially similar or nearly identical to support her claim for unlawful discrimination. It is the plaintiff's burden to prove by a preponderance of the evidence the similarity of circumstances surrounding the employees, it is not the defendant's burden to prove dissimilarity. *Id.*

Plaintiff is required to establish by credible evidence more than her own subjective belief that she was terminated because of her race; plaintiff's personal conclusion that her race was the motivating or determining factor in defendant's decision, without more, does not support a finding that defendant made his decision with impermissable, discriminatory intent or purpose. See *Locke v. Commercial Union Insurance Co.,* 676 F.2d 205 (6th Cir.1982); see also *Ackerman v. Diamond Shamrock,* 670 F.2d 66 (6th Cir.1982).

■ Plaintiff has not demonstrated by a preponderance of the evidence that defendant discriminated against her because of her race. The fact that defendant considered from time to time the possibility of expanding his office to include white employees, and the fact that the result of his hiring decisions resulted in the termination of an employee who is black while retaining an employee who is white, is incidental and not evidence of an intentional or purposeful race discrimination against plaintiff by defendant.

Defendant had legitimate business reasons to attempt to resolve the personnel problems in his office and to choose to retain Ms. Adams and to terminate plaintiff in furtherance of that goal. Further, plaintiff has not proven by a preponderance of the evidence that she was similarly situated with the other employees to substantiate a finding of disparate treatment by defendant in her case. The facts related by the witnesses at trial vividly illustrate a tense and unpleasant work atmosphere with plaintiff playing a major role in generating that tension. Defendant also demonstrated, through repeated efforts, a willingness to give plaintiff the opportunity to succeed in her job and in her relationships with her co-workers, and only after plaintiff demonstrated an inability to do so, was defendant compelled to terminate her.

Significantly, the Court finds that not only is there no evidence to substantiate plaintiff's claim that white employees were hired or retained at the expense of black employees, but, rather the evidence demonstrates that defendant's hiring and firing practices were based on valid business reasons and common sense and were directed at giving many blacks the opportunity to work in his business.

Based upon the foregoing, this Court concludes that plaintiff has not proven by a preponderance of the evidence that defendant intentionally or purposefully discriminated against her based on her race when he terminated her on September 28, 1987. Accordingly, the Court hereby ORDERS that judgment be entered in favor of defendant Everett Rucker d/b/a Everett Rucker Insurance Agency and DIRECTS the Clerk of Courts to enter final judgment forthwith.

IT IS SO ORDERED.