694 F.Supp. 362 (1988)
WINZELER EXCAVATING CO., Plaintiff,
v.
William E. BROCK, Secretary of Labor, et al., Defendants.
No. C 86-7742.
United States District Court, N.D. Ohio W.D.
June 8, 1988.
*363 Gregory L. Hammond, Millisor, Belkin & Nobil, Akron, Ohio, for Winzeler Excavating Co.
Verne K. Armstrong, Toledo, Ohio, Jeffrey R. Ingraham, Asst. Pros. Atty., Celina, Ohio, Dennis Muchnicki, Asst. Atty. Gen., Columbus, Ohio, Robert E. Dunlap, Thompson, Dunlap, Heydinger, O'Connor and MacDonald, Bellefontaine, Ohio, Wendy Bader, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., for defendants.

OPINION and ORDER
WALINSKI, Senior District Judge.
This cause is before the Court on plaintiff's motion for preliminary injunction, federal defendants' motion for summary judgment and a motion to dismiss on Eleventh Amendment grounds filed by defendant Ohio Environmental Protection Agency ("Ohio EPA"). This is an action for declaratory and injunctive relief. Plaintiff alleges due process violations because defendants withheld government contract funds prior to affording plaintiff a hearing on alleged prevailing wage rate infractions. Jurisdiction is based on 28 U.S.C. § 1331.

FACTS
Plaintiff Winzeler Excavating Company ("Winzeler") installs sanitary and storm sewer lines. In November, 1983, Winzeler entered into certain construction contracts with the Indian Lake Sanitary Sewer District, Logan County, Ohio. The work was federally funded in part through a grant under the Federal Water Pollution Control Act, 33 U.S.C. § 1372 (1982), which provides for compliance with statutory labor standards. Accordingly, the wage rates paid to plaintiff's workers on the Indian Lake project were governed by the Davis-Bacon Act, 40 U.S.C. § 276a (1982), and related acts.
In late 1985, defendants United States Department of Labor and the Secretary of Labor ("federal defendants"), through the Columbus, Ohio office of the Employment Standards Administration Wage and Hour Division, conducted a compliance review investigation of plaintiff's employment practices on the Indian Lake project. By letter dated December 11, 1985, said defendant notified plaintiff that several statutory violations had occurred. Specifically, plaintiff had allegedly underpaid truckers hauling stone materials from several gravel pits onto the construction sites, and had underpaid power equipment operators and laborers employed at private gravel pits located outside the boundaries of the sewer lines. Plaintiff declined to make restitution and pay back wages, claiming that the workers in question were physically off the site and thus excluded by regulation from coverage under the prevailing wage acts.
By letter dated December 18, 1985, federal defendants requested that Ohio EPA withhold payments accrued to plaintiff on the Indian Lake project, which was almost complete at that time. Contract funds due plaintiff of approximately $112,000.00 were withheld in January, 1986. Plaintiff objected to defendants' actions and requested a hearing on whether prevailing wages were due for such workers.
Federal defendants thereafter attempted to conduct a new investigation of plaintiff's employment practices on a second sewer construction project in Mercer County, Ohio. No hearing had as yet been scheduled regarding the dispute on the Indian Lake project. Thus, in October, 1986, plaintiff filed the instant action.
Initially, plaintiff sought an injunction precluding federal defendants from investigating and withholding funds on plaintiff's similar projects pending a determination of the gravel pit issue on the Indian Lake Project. In addition, plaintiff demanded payment of the approximately $112,000.00 in contract funds being withheld. Plaintiff also requested a declaratory judgment that withholding funds due on a federal construction project prior to a hearing amounted to a taking of plaintiffs property without due process of law. Plaintiff alleged that its ability to continue operations, obtain future contracts and secure bonding were adversely affected. Finally, plaintiff asked for an award of as of yet unascertained damages, attorney fees and costs of the action.
*364 On October 9, 1986, after hearing the parties' evidence and reviewing the exhibits presented, this Court took plaintiff's motion for injunction under advisement but ordered other investigations by defendants of plaintiff's sites stayed pending further rulings of the court.[1]
Thereafter, on November 5, 1986, plaintiff filed a motion for expedited hearing with the Employment Standards Administration Wage and Hour Division. In March, 1987, with further investigations of plaintiff stayed by this Court, federal defendants joined in the request to expedite an administrative hearing.
An Administrative Law Judge ("ALJ") eventually heard the matter in June, 1987. He issued his decision in February, 1988.[2] In a carefully documented and seemingly well-reasoned opinion, the ALJ concluded that Winzeler should have paid the prevailing wage rate to the underpaid truck drivers and other operators and laborers. His determination turned on interpreting the phrase "site of the work" in plaintiff's contract. The ALJ ruled that the contract language included workers involved with the gravel pits. Thus, the accrued contract funds being withheld from plaintiff by Ohio EPA were ordered released for payment to the individual employees.

DISCUSSION
In light of the ALJ's ruling, this Court finds plaintiff's first two claims (that defendants be enjoined from further investigations pending a determination on the Indian Lake wage violations and that the contract funds be paid out to plaintiff) to be moot. Furthermore, for the reasons which follow, this Court finds it appropriate to enter summary judgment for defendants on plaintiff's declaratory and damages claims.
Rule 56, Fed.R.Civ.P., directs the disposition of a motion for summary judgment. In relevant part Rule 56(c) states:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
The Court's function in ruling on a motion for summary judgment is to determine if any genuine issue exists for trial, not to resolve any factual issues, and to deny summary judgment if material facts are in dispute. United States v. Articles of Device, 527 F.2d 1008, 1011 (6th Cir.1976); Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193, 1195 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the evidence must be viewed in a light most favorable to the party opposing the motion." Bouldis v. U.S. Suzuki Motor Corp., 711 F.2d 1319, 1324 (6th Cir. 1983). To summarize, summary judgment is only appropriate when no genuine issue of material fact remains to be decided, and when the undisputed facts, viewed in a light most favorable to the non-moving party, entitle the movant to judgment as a matter of law. Smith v. Pan Am World Airways, 706 F.2d 771, 773 (6th Cir.1983).
A principle purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision. In relevant part the provision states:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he *365 does not so respond, summary judgment, if appropriate, shall be entered against him.
Rule 56(e), Fed.R.Civ.P. Rule 56(e) requires the non-moving party to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. at 324, 106 S.Ct. at 2553.
In the case sub judice, no material question of fact remains for trial and the Court finds defendants entitled to judgment as a matter of law. A review of the Davis-Bacon Act, 40 U.S.C. § 276a(a) (1982), reveals that withholding of funds from contractors for wage rate violations serves the goal of protecting laborers on government contracts. In relevant part:
[T]here may be withheld from the contractor so much of the accrued payments as may be considered necessary by the contracting officer to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract ... and the rates of wages received by such laborers and mechanics....
20 U.S.C. § 276a(a) (1982).
The regulations promulgated to administer the labor standard provisions of the Davis-Bacon and related acts require that a withholding clause be inserted in federally assisted construction contracts. 29 C.F. R. § 5.5(a)(2) (1987).[3] Thus, the parties' contract documents and specifications for the Indian Lake project included the following clause:
(a) The Contracting Officer may withhold or cause to be withheld from the Prime Contractor so much of the accrued payments or advances as may be considered necessary (1) to pay laborers and mechanics, including apprentices, trainees, watchmen, and guards, employed by the Contractor or any subsontractor on the work the full amount of wages required by the contract, and (2) to satisfy any liability of any contractor for liquidated damages under paragraph (b) of the clause entitled "Contract Work Hours and Safety Standards ActOvertime Compensation."
(b) If any Contractor fails to pay any laborer, mechanic, apprentice, trainees, watchman, or guard, employed or working on the site of the work, all or part of the wages required by the contract, the Contracting Officer may, after written notice to the Prime Contractor, take such action as may be necessary to cause suspension of any further payments or advances until such violations have ceased.
(Plaintiff's Exhibit 1).[4]
Essentially, plaintiff was required by statute, regulations and contract to pay workers the rates specified in the contract's wage determination schedule or suffer suspension of payment on the contract. Plaintiff does not complain that stopping payment on the contract was itself unconstitutional. Rather, plaintiff asserts that suspending payments merely upon notice and prior to any hearing constitutes a taking of property without due process of law. This Court's focus, then, turns first to *366 whether plaintiff has any right to continued payment under the contract and second, if Winzeler has such a property right, to what process is due.
One court has had little trouble finding that government contracts do not generate a property interest in an uninterrupted flow of payments to the contractor. In G & H Machinery Co. v. Donovan, 96 Lab. Cas. (CCH) ¶ 34,354 (S.D.Ill.1982), the plaintiff alleged a due process violation caused by prehearing withholding under the Service Contract Act, 41 U.S.C. § 351 et seq. The court in G & H stated:
This argument need not long detain the Court. The Fifth Amendment, obviously applicable to federal agencies, states that no person shall "be deprived of life, liberty or property, without due process of law." Petitioners in this case do not have a property interest in "an uninterrupted transmittal of payments pursuant to the terms of the service contract...." The contracts expressly incorporated the entire SCA, and the withholding provision of section 352(a). Thus, the contracts and surrounding statutes and regulations, which defined property interests and protectible expectations, certainly do not generate a property interest in an uninterrupted flow of payments.
96 Lab.Cas. (CCH) at p. 45,317 (citations omitted).
In the case sub judice, the contract, statutes and regulations require payment of prevailing wages. Such wages admittedly were not paid to certain of plaintiff's workers associated with the gravel pits. Thus, the Court is hard-pressed to find an unequivocal right to the uninterrupted payment of contract funds. Without a property interest, the Court need not determine what process is due. However, assuming arguendo that Winzeler had such a property right, the Court will review the administrative methods surrounding the withholding of accrued contract payments.
The administrative procedures for dealing with disputes over the payment of prevailing wage rates provide for notice to the contractor of investigation findings by registered or certified mail. 29 C.F.R. § 5.11(b)(1) (1987). If the contractor refuses to rectify the alleged violations, future payments or advances of funds are suspended. The contractor may then, within 30 days, make a written request for a hearing. 29 C.F.R. § 5.11(b)(2) (1987). Upon receipt of a contractor's request, the matter is referred to the Chief ALJ for designation of an ALJ to conduct hearings. 29 C.F.R. § 5.11(b)(3) (1987). The hearing is to be conducted according to the rules of practice for administrative proceedings as set forth in 29 C.F.R. Part 6 (1987). Id. During the pendency of these administrative procedures, contract funds are held in a deposit account.
The foregoing provisions do not require a hearing prior to suspending contract payments. The regulations also contain no explicit provisions restricting the amount of time that elapses before a hearing is actually held or a determination order issued. Thus, the determinitive issue for the Court is whether the failure to provide an administrative hearing before withholding contract funds, or within a reasonable time thereafter, is an unconstitutional deprivation of property.[5]
In determining whether due process requires a prior evidentiary hearing, courts have distinguished between final and temporary deprivations of property. In McCasland v. U.S. Postal Service, 82 Lab. Cas. (CCH) ¶ 33,607 (N.D.N.Y.1977), similar withholding procedures in the Service Contract Act, 41 U.S.C. § 351 et seq., were constitutionally challenged. The case involved a mail hauler who had contracted with the United States Postal Service to transport mails between certain cities. As *367 the result of a compliance investigation of the plaintiff in McCasland, back wages were found owed to numerous employees. The mail hauler disputed the purported violations and made no assurances of future compliance. Accordingly, the Department of Labor, Wage and Hour Division, directed the Postal Service to withhold sufficient funds to cover back wages. The mail hauler sought a temporary restraining order and preliminary injunction on grounds that "formal notice and an opportunity for an adversary hearing prior to any withholding of plaintiff's periodic payments [wa]s mandated by the Due Process Clause of the Fifth Amendment." Id. at p. 48,064.
In ruling on the injunction request, the court in McCasland found that withholding of accrued payments prior to a hearing may be the only viable means by which to ensure the availability of funds to employees. Id. at p. 48,066. The court also noted that the monies are held in a deposit fund which may ultimatly be recovered by the contractor following a hearing on the merits. Id. at p. 48,067. Thus, withholding payments prior to hearing was found not to be an unconstitutional denial of due process. Id. at p. 48,068. The Court in McCasland stated:
Procedural due process imposes restraints upon governmental decisions whenever the deprivation of a "liberty" or "property" interest is implicated. The initial determination to be made, therefore, is whether the nature of plaintiff's interest in an uninterrupted transmittal of payments pursuant to the terms of the service contract is protected by the Constitution. And, "[o]nce it is determined that due process applies, the question remains what process is due."
The essence of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." That is, before an individual is finally deprived of a property interest, some type of hearing is required. To this end, the concept of due process must be flexible, thereby permitting such procedural protections as the particular circumstances may require. Accordingly, the procedures which may be required in any given case necessitates an analysis and accommodation between the private and governmental interests affected.
* * * * * *
The government's interest is to ensure that adequate wages are paid to employees of federal service contractors. Significantly, in terms of an examination of the private interest at stake, I am persuaded that plaintiff's interest in an uninterrupted receipt of his income does not begin to approach the compelling sense of the similar interest expressed by the welfare recipient in Goldberg [v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)]....
Finally, summary governmental action pending final administrative determinations have repeatedly been held to comport to the dictates of the Due Process Clause.
Id. at pp. 48,067-068 (citations omitted).
Despite the sound legal basis for the McCasland court's decision, this Court must point out factual dissimilarities with the case at bar. At the time of the McCasland court's ruling, no funds had as yet been withheld from the mail hauler. Id. at p. 48,064. Moreover, in McCasland, the court stressed the fact that plaintiff had been assured of a hearing within three months after issuance of the administrative complaint. Id. at p. 48,067.
Winzeler, on the other hand, was forced to wait over two years for a hearing and determination, with funds being suspended the entire time. It therefore becomes questionable whether the failure to mandate a hearing within a certain period of time makes Winzeler's deprivation more than a temporary loss of income. Upon careful analysis, the Court thinks not. Not only would court ordered timing restrictions have a disruptive effect on the administrative process, provision of a hearing within a reasonable time after suspension of payments can be presumed from the statutes and regulations. Furthermore, the policy reasons behind immediate withholding as enunciated in McCasland weigh in favor of finding a contractor's loss only *368 temporary, in spite of long delays in the administrative process. Thus, the Court finds due process concerns satisfied by an adversary hearing before any final deprivation occurs.
Accordingly, federal defendants' motion for summary judgment is found well taken and defendants are entitled to judgment as a matter of law. It is, therefore
ORDERED that plaintiff's motion for injunctive relief is denied.
FURTHER ORDERED that federal defendants' motion for summary judgment is granted.
FURTHER ORDERED that summary judgment is entered against plaintiff and in favor of all defendants.
FURTHER ORDERED that defendant Ohio EPA's motion to dismiss is deemed moot.
FURTHER ORDERED that this cause is dismissed.
NOTES
[1] The Court's order staying further investigations was vacated on appeal.
[2] Plaintiff has appealed the ALJ's ruling, making it inoperative unless and until affirmed by the Appeals Board. 29 C.F.R. § 6.19(b)(1) (1987).
[3] 29 C.F.R. § 5.5(a)(2) (1987) provides in relevant part:

Withholding. The (write in name of Federal Agency or the loan or grant recipient) shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the contractor under this contract or any other Federal contract with the same prime contractor, or any other federally-assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same prime contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees, and helpers, employed by the contractor or any subcontractor the full amount of wages required by the contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee, or helper, employed or working on the site of the work ... all or part of the wages required by the contract, the (Agency) may, after written notice to the contractor, sponsor, applicant, or owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.
[4] References to exhibits are to those submitted at the hearing on plaintiff's motion for preliminary injunction which took place on October 8, 1986.
[5] In the ordinary case, a distinction is drawn between constitutional questions and simple matters of contract. Parties may contractually agree to what would otherwise be a constitutional deprivation. Where a statute peremptorily requires certain clauses to be inserted, however, as is the case here, such clauses are not binding if the statute is found unconstitutional. Thus, the constitutional issue in this instance is not extinguished by plaintiff's voluntary entry into a contractual arrangement.