AMES CONSTRUCTION COMPANY, a
Minnesota corporation, Plaintiff,

v.

Elizabeth DOLE, Secretary of Labor, Frances Perkins Building, Third Street and Constitution Avenue, Washington, D.C. 20210; United States Department of Labor, Employment Standards Administration, Wage and Hour Division, Washington, D.C.; United States Department of Labor, Employment Standards Administration, Wage and Hour Division, Minneapolis District Office, 220 South Second Street, Room 106, Minneapolis, MN 55401; Leonard Levine, individually and in his capacity as Director of the Minnesota Department of Transportation, John Ireland Boulevard, St. Paul, MN 55155; Paul M. Bergman, individually and in his capacity as a Contract Administration Engineer for the Minnesota Department of Transportation, Defendants.

No. Civ. 4–89–883.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 11, 1989.

A. Patrick Leighton, John M. Harens, Phyllis Karasov, Moore, Costello & Hart, St. Paul, Minn., for plaintiff.

Jerome G. Arnold, U.S. Atty., and Kenneth W. Saffold, Asst. U.S. Atty., Minneapolis, Minn., for defendants Elizabeth Dole, U.S. Dept. of Labor, Washington, and U.S. Dept. of Labor, Minneapolis.

Hubert H. Humphrey, III, Minnesota Atty. Gen., and Donald J. Mueting, Asst. Atty. Gen., St. Paul, Minn., for defendants Levine and Bergman.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiff's motion for a preliminary injunction. The motion will be denied.

FACTS

Plaintiff Ames Construction Company is a Minnesota corporation engaged primarily in earth work, excavation, heavy highway work and site development. The present action arises out of Ames' involvement in

the construction of the I–394 construction project in Minneapolis. Ames successfully bid on an earth-moving job for the I–394 project, and subcontracted with four trucking firms to deliver granular fill material to the site. The Davis–Bacon Act, 40 U.S.C. § 276a, *et seq.*, requires that government contractors pay "prevailing wage rates" at federal or federally-assisted construction projects for work performed "on site." The four firms with whom Ames subcontracted for hauling sand and gravel to the site, however, paid their truck drivers less than "prevailing wages" when they delivered material to the site, on the grounds that this work was not covered by Davis–Bacon because it was not "on site." Ames claims that it, in preparing and submitting its bid on the I–394 project, and the trucking firms in setting the wages for their truckers, relied upon specific representations concerning the applicability of Davis–Bacon to the trucking operations made by the Minnesota Department of Transportation (MnDOT), on a well-established policy of the Federal Highway Administration, as well as on specific guidelines of the Department of Labor Field Operations Handbook.

After plaintiff began work on the I–394 project on March 11, 1985, the Department of Labor (DOL) began an independent investigation of Ames' payroll records to determine whether the trucking firms were complying with the Davis–Bacon Act. The Wage and Hour Division of the DOL determined that the four trucking firms owed their employees approximately $530,614.20 under the provisions of Davis–Bacon, as well as the Contract Work Hours and Safety Standards Act. After the DOL notified each individual trucking firm of their respective back wage assessments, and after each of the firms refused to pay these assessments, the DOL sent Ames a letter demanding that Ames either commit to paying the $530,614.20 in back wages by July 19, 1989 or face immediate suspension of contract funds earned on the I–394 project. On August 11, 1989, the regional director of the DOL's Wage and Hour Division wrote to the contracting officer of

MnDOT ordering him to withhold the funds from Ames' next pay request on the I–394 job. On September 11, 1989, the MnDOT officer responded by stating that the funds would be withheld on November 1, 1989.[1]

On October 5, 1989 plaintiff brought this action claiming that withholding funds due Ames for work performed on the I–394 project prior to providing a hearing on Ames' liability for Davis–Bacon violations would be a deprivation of property without due process of law. Ames seeks an order preliminarily enjoining the MnDOT and the DOL from withholding funds until a hearing on the alleged violations has been held.

DISCUSSION

The test for whether preliminary injunctive relief should issue is set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109 (8th Cir.1981). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." 640 F.2d at 113. Four factors are weighed:

> (1) the threat of irreparable harm to the movant;
>
> (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant;
>
> (3) the probability that movant will succeed on the merits; and
>
> (4) the public interest.

*Dataphase,* 640 F.2d at 114.

The key issue under the *Dataphase* factors is whether Ames is likely to prevail at a trial of the merits of its claim that it will be denied due process by the prehearing suspension of funds. Section 1(a) of the Davis–Bacon Act, the provision under which the DOL ordered suspension of the funds, provides that every contract to which the Act applies must contain a stipulation that:

> there may be withheld from the contractor so much of accrued payments as may be considered necessary by the contracting officer to pay [employees on the contract] the difference between the rates of

---

**1.** At Ames' request, the date for withholding to commence was moved to November 15, 1989.

wages required by the contract ... and the rates of wages received....

40 U.S.C. § 276a(a). Regulations promulgated pursuant to this provision require that payments under the contract shall be withheld for failure to comply with the Act:

In the event of failure or refusal of the contractor or subcontractor to comply with labor standards clauses contained in section 5.5 in the applicable statutes ... a federal agency, upon its own action or upon written request of an authorized representative of the Department of Labor, shall take such action as may be necessary to cause a suspension of the payment, advance or guarantee of funds....

29 C.F.R. § 5.9. The Act provides that following notification of alleged violations, a contractor may, within thirty days, make a written request for hearing. 29 C.F.R. § 5.11(b)(2). Upon receipt of a contractor's request, the matter is referred to the chief ALJ for designation of an ALJ to conduct hearings. 29 C.F.R. § 5.11(b)(3). The hearing is to be conducted according to the rules of practice for administrative proceedings as set forth in 29 C.F.R. Part 6. While these administrative procedures are pending, contract funds are held in a deposit account. The provisions do not require a hearing prior to suspending contract payments, nor do they contain a deadline by which the government must provide a hearing following suspension.

Plaintiff does not question the constitutionality of the suspension provisions per se, but rather disputes the DOL's application of them through suspension of contract payments prior to providing plaintiff with an opportunity to be heard on the alleged Davis–Bacon violations. By failing to provide such a pre-suspension hearing, Ames alleges that the DOL has deprived it of property without due process of law in violation of the fifth amendment.

## I. The Deprivation Inquiry

A due process claim has two elements: (1) deprivation of a protectible interest, and (2) denial of adequate procedural protections. *Goldberg v. Kelly*, 397 U.S. 254, 90

S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1983). In arguing that it has a protectible interest in contract payments from the DOL and MnDOT, Ames relies upon analogy to prehearing garnishment of wages or suspension of government benefits, two issues addressed by the United States Supreme Court in *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and *Goldberg*, 397 U.S. 254, 90 S.Ct. 1011. In *Sniadach*, the Court invalidated Wisconsin's garnishment procedure whereby wages could be frozen upon issuance of a summons by the clerk of court at the request of a creditor's lawyer. The Court found this to be an "obvious" deprivation of property without due process. *Sniadach*, 395 U.S. at 342, 89 S.Ct. at 1823. In *Goldberg*, the Court overturned New York procedures by which welfare benefits could be terminated without prior notice or hearing. The Court held that welfare benefits were a matter of statutory entitlement for persons qualified to receive them, and that their termination involved state action that adjudicates important rights. *Goldberg*, 397 U.S. at 262, 90 S.Ct. at 1017. Finding that welfare benefits are not merely a "privilege" but are rather a form of "property" to which due process rights apply, the Court discussed the concept of property as follows:

Much of the existing wealth in this country takes the form of rights that do not fall within traditional common law concepts of property. It has been aptly noted that

"[s]ociety today is built around entitlement. The automobile dealer has his franchise, the doctor and lawyer their professional licenses, the worker his union membership, contract, and pension rights, the executive his contract and stock options; all are devices to aid security and independence. Many of the most important of these entitlements now flow from government: subsidies to farmers and businessmen, routes for airlines and channels for television stations; long term contracts

for defense, space, and education; social security pensions for individuals. Such sources of security, whether private or public, are no longer regarded as luxuries or gratuities; to the recipients they are essentials, fully deserved, and in no sense a form of charity."

*Id.* n. 8, *quoting* Reich, *Individual Rights and Social Welfare: The Emerging Legal Issues,* 74 Yale L.J. 1245, 1255 (1965).

In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court held unconstitutional Florida and Pennsylvania prejudgment replevin provisions permitting creditors to obtain a prejudgment writ of replevin through ex parte application to a court clerk. Discussing the definition of "property" for purposes of the Due Process Clause, the Court stated:

> The appellants who signed conditional sales contracts lacked full legal title to the replevied goods. The fourteenth amendment's protection of "property," however, has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to "any significant property interest," including statutory entitlements.

*Id.* at 86, 92 S.Ct. at 1997 (citations omitted). The Court rejected the district court's finding that the goods subject to the replevin statute were not deserving of due process because they were not "absolute necessities of life," based upon a narrow reading of *Sniadach* and *Goldberg:*

> This reading of *Sniadach* and *Goldberg* reflects the premise that those cases marked a radical departure from established principles of procedural due process. They did not. Both decisions were in the mainstream of past cases, having little or nothing to do with the absolute necessities of life but establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect. In none of these cases did the court hold that this most basic due process requirement is limited to the protection of only a few types of property interest.... Nor did they carve out a

rule of necessity for the sort of non-final deprivations of property that they involved. That was made clear in *Bell v. Burson,* 402 U.S. 535 [91 S.Ct. 1586, 29 L.Ed.2d 90] holding that there must be an opportunity for a fair hearing before mere suspension of a driver's license. A driver's license clearly does not rise to the level of "necessity" exemplified by wages and welfare benefits. Rather, as the court accurately stated, it is an "important interest," *Id.* at 539 [91 S.Ct. at 1589] entitled to the protection of procedural due process of law.

*Fuentes,* 407 U.S. at 88–89, 92 S.Ct. at 1998. *See also Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (individual has property interests in continuing right to operate motor vehicle).

Defendant does not argue that payments due under a government contract cannot constitute a form of property. Defendant points to the fact that property interests "are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). According to defendant, plaintiff's property rights exist solely by function of its contract with the government, and that this contract contains a provision required by law authorizing the government to withhold payments to satisfy potential Davis–Bacon violations. Ames' property interest in contract payments, therefore, according to the government, are limited by the government's right to withhold those payments for alleged Davis–Bacon violations. According to the government, since Ames' contract for the construction of I–394 specifically provided for suspension of payments in the situation presented here, Ames can claim no constitutionally-protected deprivation of property. Defendant relies upon *Ray v. United States Department of Labor,* 100 Labor Cases (CCH) ¶ 34,514 (C.D.Ill.1984) which found no property interest in the uninterrupted transmittal of payments un-

der a contract covered by the Service Contract Act.

▮ The Court finds that the government's suspension of payments to Ames does constitute a deprivation of property subject to the due process clause of the fifth amendment. At least one of the courts upon which the government relies expressly refused to find that because a contractor was required to sign a contract authorizing the suspension, the contractor could not claim a constitutionally-protected deprivation of property:

> In the ordinary case, a distinction is drawn between constitutional questions and simple matters of contract. Parties may contractually agree to what would otherwise be a constitutional deprivation. Where a statute peremptorily requires certain clauses to be inserted, however, as is the case, such clauses are not binding if the statute is found unconstitutional. Thus, the constitutional issue in this instance is not extinguished by plaintiff's voluntary entry into a contractual arrangement.

*Winzeler Excavating Co. v. Brock,* 694 F.Supp. 362, 366 n. 5 (N.D.Ohio 1988).[2] Thus, in this case, the question of whether plaintiff was deprived of a property right, and the question of whether the deprivation was without due process, fold into one another. Plaintiff's contract for the construction of I–394 conferred upon it property interests protectible by due process. That as a condition of the contract plaintiff was obligated to submit to suspension of payment for alleged violations does not deprive it of the ability to question the constitutionality of the method by which the suspension is effected. *Winzeler, supra.* The key issue, therefore, is whether the procedures offered plaintiff by the DOL and MnDOT are sufficient under the due process guarantee of the fifth and fourteenth amendments.

**2.** The Supreme Court has sustained contractual waiver of due process rights when made "voluntarily, intelligently, and knowingly," *D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 187, 92 S.Ct.

II. *The Due Process Inquiry*

▮ Due process is a flexible doctrine and calls for such procedural protections as a particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The Supreme Court has articulated the following tests for determining the demands of due process in particular contexts:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

In this case, the government correctly notes that the private interest at issue here is not a final deprivation of funds. Plaintiff will be afforded an administrative hearing before an administrative law judge (ALJ) to determine whether plaintiff has committed the alleged violations before the contract payments will be held to be finally forfeited. Rather, plaintiff's interest is in the temporary deprivation of the use of its funds. The key issues are the latter two *Mathews* factors, *i.e.,* the risk of an erroneous deprivation and the value of additional procedural safeguards. The government contends that a hearing is never constitutionally required before an individual is temporarily deprived of property. This argument, however, ignores the plain holdings of *Fuentes* and other cases in which a hearing was held to be necessary prior to a temporary deprivation of property. As the Court held in *Fuentes:*

> It is now well settled that a temporary non-final deprivation of property is nonetheless a "deprivation" in terms of the fourteenth amendment.

775, 783, 31 L.Ed.2d 124 (1972), but not, as in *Fuentes,* in a contract of adhesion. *Fuentes,* 407 U.S. at 95, 92 S.Ct. at 2001.

407 U.S. at 84–85, 92 S.Ct. at 1996. There is no bright-line rule that hearings are never required prior to non-final deprivations of property. Rather, the issue of whether a pre-deprivation hearing is necessary must be determined on a case-by-case basis.

In *Fuentes*, the Supreme Court adopted a three-part test to determine when the government may seize property prior to notice and opportunity to be heard. First, the government must prove that the seizure is "directly necessary to secure an important governmental or general public interest." Second, there must be a "special need for very prompt action." Third, the seizure must be initiated by an official after determining that the action was necessary and justified in the particular instance under the standards of a narrowly-drawn statute. *Fuentes*, 407 U.S. at 91, 92 S.Ct. at 1999. The Court held that prehearing seizure will comport with due process only "in the most extraordinary circumstances," *id.*, at 91, 92 S.Ct. at 1999, and that *"some form of notice and hearing—formal or informal—is required before deprivation of a property interest that 'cannot be characterized as 'de minimis.'"* *Id.* at 90 n. 21, 92 S.Ct. at 1999 n. 21, *quoting Sniadach*, 395 U.S. at 342, 89 S.Ct. at 1823 (Harlan, J., concurring) (emphasis added). The Court has approved summary seizure of property to collect the internal revenue of the United States, *Phillips v. Commissioner*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); to protect against a bank failure, *Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); as well as to meet the needs of a national war effort, *Central Union Trust v. Garvan*, 254 U.S. 554, 566, 41 S.Ct. 214, 215, 65 L.Ed. 403 (1921); and to protect the public from misbranded drugs, *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); and contaminated food. *North American Storage Co. v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908).

To date, the three courts that have considered whether the government may withhold funds from a contractor for suspected violations of the Davis–Bacon Act prior to a hearing have all affirmed the practice. *Fry Bros. Corp. v. HUD*, 614 F.2d 732 (10th Cir.1980); *Winzeler Excavating Co. v. Busch*, 694 F.Supp. 362 (N.D.Ohio 1988); *Ray v. United States Department of Labor*, 100 Labor Cases (CCH) 1134 (C.D.Ill. 1984).

In *Fry Bros.*, a subcontractor on a federally-supported housing project brought an action for declaratory and injunctive relief after a dispute arose between it and the federal government under the Davis–Bacon Act. The Court sustained the district court's dismissal of the complaint for failure to state a claim. In a brief opinion, the Court held that "the shut down and withholding of funds is provided for by statute, 40 U.S.C. § 276a(a), and the corporation had no right to the 'hearing' that it claims was wrongfully denied." *Fry Bros.*, 614 F.2d at 734.

In *Winzeler*, a contractor sought declaratory and injunctive relief alleging that the withholding of government contract funds prior to a hearing on alleged prevailing wage rate infractions constituted a violation of due process. Plaintiff argued that the Davis–Bacon Act was unconstitutional not only because it failed to provide a hearing before the payment suspension, but also because it contained no provision for a prompt hearing *after* the suspension. The Court in *Winzeler* noted that plaintiff was forced to wait more than two years for a hearing and determination while funds were suspended. The Court therefore considered whether the failure to mandate a hearing within a specified time period made Winzeler's deprivation more than a "temporary" loss of income. The Court declined, however, to impose timing restrictions upon the Department of Labor because to do so would "have a disruptive effect on the administrative process." *Winzeler*, 694 F.Supp. at 367. The Court concluded that the contractor's loss was only temporary, in spite of "long delays in the administrative process," *id.* at 368, and that due process concerns would be satisfied by a hearing any time before final deprivation.[3] *See*

---

**3.** Plaintiff correctly notes that this statement is dicta inasmuch as by the time of the Court's

*also McCasland v. United States Postal Service,* 82 Labor Cases (CCH) ¶ 33,607 (N.D.N.Y.1977) (similar withholding procedures in the Service Contract Act, 41 U.S.C. § 351, not unconstitutional despite lack of notice and an opportunity for adversary hearing prior to withholding; *Ray v. United States Department of Labor,* 100 Labor Cases (CCH) 1134 (C.D.Ill.1984)).

In *Blackhawk Mining Co. Inc. v. Andrus,* 711 F.2d 753 (6th Cir.1983), the United States Court of Appeals for the Sixth Circuit sustained a similar provision of the Surface Mining Control and Reclamation Act requiring prepayment of proposed penalty assessments into escrow as a condition for administrative review. The Court found that the potential deprivation for plaintiff was "slight and significantly less than that of the welfare recipient in *Goldberg v. Kelly,*" *id.* at 757, noting that the Act required reimbursement of improperly assessed penalties within thirty days with interest. The Court found that the plaintiff's interest in having use of these funds for this period of time was "not of sufficient magnitude to overcome the government's interest." *Id.* The Court also noted that the risk of an erroneous deprivation of plaintiff's property interest was slight, finding that plaintiff had the opportunity to submit written information and the right to an informal conference. Finally, the Court noted that the government's interest in prompt assessment and collection of civil penalties to assure compliance with the act was substantial, finding that the prepayment requirement was adopted "to avoid the problem of the non-collection of fines and to discourage delay of the collection process through frivolous appeals." The Court noted that the statute entitled the operator to formal review of the citation and amount of penalty within thirty days of receipt of the notice of violation, including a full adversarial evidentiary hearing before an ALJ. 30 U.S.C. § 1268(c); 43 C.F.R. § 4.1152(b)(1). *Accord B & M Coal Corp. v. Office of Surface Mining Reclamation and Enforcement,* 699 F.2d 381 (7th Cir.1983).

The Court finds that section 276a comports with the requirements of *Fuentes* for a prehearing seizure of property. The first issue under *Fuentes* is the importance of the governmental interest. The purpose of the Davis–Bacon Act is to assure that workers on public construction projects are paid prevailing wage rates established by private industry. *McDaniel v. University of Chicago,* 548 F.2d 689, 693 (7th Cir. 1977). As the Supreme Court stated in *United States v. Binghamton Construction Co. Inc.,* 347 U.S. 171, 174, 74 S.Ct. 438, 440, 98 L.Ed. 594 (1954):

> The language of the [Davis–Bacon Act] and its legislative history plainly show that it was not enacted to benefit contractors but rather to protect their employees from substandard earnings by fixing a floor under wages on government projects.... On its face, the Davis–Bacon Act is a minimum wage law designed for the benefit of construction workers.

*Id.* at 176–78, 74 S.Ct. at 441–42. The government here also argues that the importance of Davis–Bacon enforcement lies in the protection of the federal contract bidding process. According to defendants, one of the purposes of the Davis–Bacon Act is to assure that contractors are not given unfair advantage over other contractors based upon cheap labor, and that if a contractor is able to ignore Davis–Bacon requirements, it may deliberately underbid to win the contract. The Court finds that the government's interest here is sufficiently "important" to warrant prehearing suspension.

As to the second element of *Fuentes,* the need for prompt action, the government argues that immediate suspension is necessary in order to guarantee that if the charges are sustained against the company, funds will be available to pay the employees who are ultimately found to be entitled to additional wages. Plaintiff contends that the bond which it was required to post as a condition for obtaining the I–394 contract should serve as sufficient guarantee of its ability to satisfy the government's

ruling, plaintiff had already received a hearing

before an administrative law judge.

claim should it be sustained on the merits. In *Blackhawk*, the court held that the government's interest in prompt assessment and collection of civil penalties to assure compliance with the act was "substantial" and that the prepayment required as a condition of appealing violations of the Surface Mining Control and Reclamation Act were for the purpose of avoiding the "problem of the noncollection of fines and to discourage delay of the collection process through frivolous appeals." *Blackhawk*, 711 F.2d at 757. Although this is a closer question, the Court concludes that the government has established a sufficient need for prompt action to justify prehearing suspension under the Davis–Bacon Act.

The final *Fuentes* requirement is that the seizure must be initiated by an official acting pursuant to the standards of a narrowly drawn statute after determining that the action was necessary and justified in a particular instance. *Fuentes*, 407 U.S. at 91, 92 S.Ct. at 1999. Here, the DOL notes that it was required to conduct, and did in fact conduct, an investigation prior to ordering the withholding in this case, *see* 29 C.F.R. § 5.6(a)(3). In conducting this investigation, the DOL examined certified payroll records submitted by Ames and issued an itemized list of alleged underpayments which is specific to the individual worker. Ames complains that the itemization fails to break down the nature of the work being performed and that it is therefore impossible to determine the accuracy of the itemization. The accuracy of the DOL's investigation, however, is a question to be decided at the hearing on the merits of the DOL's charges. Prior to a hearing on the merits Ames will be entitled to full disclosure from the DOL as necessary to defend itself against the claimed violations. At this stage, however, *Fuentes* requires only that the government make a determination that the suspension was justified in this particular instance.

The Court finds that it is reasonably clear that the DOL has sufficiently investigated the claimed violations to establish "probable cause" to believe that violations have occurred. *See Barchi*, 443 U.S. at 65, 99 S.Ct. at 2649. The Court concludes that the *Fuentes* factors have been met, and Ames was not denied due process by the government's failure to grant it a hearing on the merits prior to issuing the order of suspension.

A determination that Ames was not entitled to a pre-suspension hearing, however, does not fully resolve the due process inquiry. If Ames was not entitled to a hearing prior to the suspension, it is still entitled to a reasonably prompt post-suspension hearing. In two recent cases, the Supreme Court has elaborated on the amount of time following a governmental deprivation in which a hearing must be provided. In *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), the Court held that a New York statute providing for suspension of a horse trainer's license was unconstitutional when it provided for a post-suspension hearing but did not specify a time in which the hearing was to be held. In *Barchi*, the Court held that the New York law did not violate the Due Process Clause merely by authorizing summary suspensions without a pre-suspension hearing. *Id.* at 63, 99 S.Ct. at 2648. Rather, the Court found that the statute violated due process in that Barchi "was not assured a sufficiently timely postsuspension hearing." *Id.* at 64, 99 S.Ct. at 2649. In sustaining the prehearing suspension, the Court noted that the state had "probable cause" to believe that the horse for which plaintiff was responsible had been drugged, based upon the testimony of an expert testing official. The Court held that "at the interim suspension stage, an expert's affirmance, although untested and not beyond error, would appear sufficiently reliable to satisfy constitutional requirements." *Id.* at 65, 99 S.Ct. at 2649. Once suspension had been imposed, however, the Court held that "the trainer's interest in a speedy resolution of the controversy becomes paramount." *Id.* at 66, 99 S.Ct. at 2650. The Court concluded:

In these circumstances, it was necessary that Barchi be assured a *prompt* postsuspension hearing, one that would proceed and be concluded without appreciable delay. Because the statute as ap-

plied in this case was deficient in this respect, Barchi's suspension was constitutionally infirm under the Due Process Clause of the fourteenth amendment.

*Id.* at 66, 99 S.Ct. at 2650 (emphasis added). *See also Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975) ("the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process.").

Recently, the Court elaborated on *Barchi* in *Federal Deposit Insurance Corporation v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988). In *Mallen,* the FDIC issued an order temporarily suspending a bank officer from continued service for an FDIC insured bank after the officer was indicted for making false statements in violation of 18 U.S.C. § 1001 and 1014. Title 12 U.S.C. § 1818(g)(1), which authorizes such a suspension, entitles a suspended official to a hearing before the FDIC within thirty days of his written request, and to a final decision within sixty days of the hearing.

The Court began its discussion by noting that "an important governmental interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *Mallen,* 108 S.Ct. at 1787. Noting that in *Barchi,* the Court found that the state's interest in preserving the integrity of the sport of horse racing was sufficiently important to justify prehearing suspension of a horse trainer's license, the Court found that the temporary suspension of a banking official prior to hearing was justified to protect the interest of depositors and to maintain public confidence in our banking institutions. *Id.* 108 S.Ct. at 1788. The Court also noted that the grand jury's determination of probable cause to believe that the bank official had committed a felony was sufficient to assure that the suspension was not "baseless."

In sustaining the ninety-day period from request for hearing to decision, the Court applied the following analysis:

[E]ven though there is a point at which an unjustified delay in completing a post-deprivation proceeding would become a constitutional violation ... the significance of such a delay cannot be evaluated in a vacuum. In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the government for the delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.

*Id.* 108 S.Ct. at 1788 (citation omitted). The Court distinguished the case from *Barchi* by noting that in *Barchi,* it was "as likely as not that the trainer would irretrievably suffer the full penalty before the state would be put to its proof at a post-suspension hearing." *Id.* 108 S.Ct. at 1791. In such a situation, plaintiff would be denied a "meaningful" opportunity to be heard.

*Barchi* and *Mallen* conclusively establish that plaintiff was not entitled to a *pre*-suspension hearing. If a hearing is not required prior to a deprivation no less serious than that of an individual's right to pursue his profession, as was the case in *Barchi* and *Mallen,* it cannot credibly be argued that Ames has a right to a hearing prior to the suspension of payment of $530,000 due on a $40 million contract. The more troublesome question, however, is whether the statute may be held to violate Ames' rights of due process by not providing fair assurance of a prompt hearing *following* suspension, as the Court held in *Barchi.* Plaintiff claims, and the government does not deny, that in a similar dispute arising out of Ames' participation in a I–494 construction project in which the DOL suspended funds for alleged Davis–Bacon violations, more than three years transpired without a hearing before an ALJ. Indeed, in the *Winzeler* case, plaintiff complained of a two-year delay before receiving a hearing before the ALJ. Ames also contends, again without dispute from the government, that it is not entitled to interest while its funds are with-

held pending final determination on the merits.

*Barchi* clearly stated that even where governmental interests justify prehearing deprivations of property, due process is violated if a post-deprivation hearing is so delayed that plaintiff is denied a meaningful opportunity to be heard. This issue, however, is not yet ripe for review. One court, in construing section 1(a) of the Davis–Bacon Act, held that the provision implicitly contained a promise of a "reasonably prompt" hearing. *Winzeler*, 694 F.Supp. at 367. The government has not yet had an opportunity to fulfill that promise in this case, inasmuch as funds were not suspended until November 15, 1989.

As in *Winzeler*, the Court interprets section 276a(a) as implicitly providing for a constitutionally "prompt" *post*-suspension hearing. Thus, given the present posture of the case, Ames is unlikely to prevail on its claim that it has been denied due process, and a preliminary injunction will not be granted.[4]

CONCLUSION

Based upon the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that plaintiff's motion for a preliminary injunction is denied.

---

4. Since Ames is at present unlikely to prevail on the merits of its due process claim it is not yet necessary to weigh the remaining *Dataphase* factors.